## BARNARD, Ad'r, etc. *v.* McKENZIE.

1. A mechanic's lien under the statute (Laws 1872, p. 147) will not lie for hauling ores from a mine to a quartz mill. The statute contemplates a lien only for such labor or material as may have been performed or furnished in the development, improvement or conservation of the mine, which has become incorporated with and constitutes a part of its value.

2. Notwithstanding the mechanic's lien was unknown to the common law, yet in view of the equitable character of the statute, it should be liberally construed, but cannot by construction be extended to cases not provided by the statute.

3. The proceeding to enforce a mechanic's lien is purely statutory, and the court has no authority to enter up a decree for a part of the claim, independent of the petitioner's right to a lien.

*Appeal from District Court of Lake County.*

THE facts are sufficiently stated in the opinion.

Messrs. MILLER & CLOUGH, for appellant.

Mr. CHARLES S. THOMAS, for appellee.

ELBERT, J.    This was a petition to enforce a mechanics' lien on the Berry tunnel, under the provision of the lien law of 1872. Sess. Laws, 1872, p. 147.

Section four of the act provides, that " all miners, laborers and others who work or labor to the amount of twenty-five dollars cr more, in or upon any mine, lode or deposit, yielding metals or minerals of any kind, or upon any shaft, tunnel, adit or other excavation designed or used for the purpose of draining or working any such mine, lode or deposit, and all persons who shall furnish any timber or other material to the amount of twenty-five dollars or more, to be used in or about any such mine, lode or deposit, shall have and may each respectively claim and hold a lien upon such mine, lode or deposit, for the amount and value of the work or labor so performed or material furnished, by filing in the county clerk and recorder's office of the

county in which such mine, lode or deposit is situated, within forty days after the time when the last work or labor was performed, or the last materials were furnished by him, a statement as required by section two of this act.''

The answer of the defendant Bruce admits the filing of a statement by McKenzie, the lien claimant, under the provisions of the act.

McKenzie's employment appears to have commenced in November, 1875, and continued until the 29th of June, 1876, at which time the last work was done. His claim is for $518, in some part for material furnished, but chiefly for work and labor in *hauling ores* from the mine. The evidence discloses that there was no material furnished nor work or labor performed by McKenzie, in or upon the mine after the 15th of June, 1876, except *hauling ores* from the mine to the stamp mill.

The statement was filed July 27, 1876, and was not within the forty days limited by the act, unless we can say that one who is employed to haul ore from a mine after it has been taken from the shaft or tunnel, is entitled to a lien under the provisions of the section cited.

Laws giving the mechanic and material-man a lien on real property, their labor or capital has contributed to improve and enhance in value, are founded in manifest equity. Such legislation is in behalf of a large and meritorious class, poorly able as a rule to sustain loss, and little qualified to secure themselves against it by safeguards of their own suggestion.

Notwithstanding the lien was unknown to the common law and is purely the creature of the statute, in view of its equitable character, we think the statute giving it should be liberally construed so as to advance its objects.

The lien, however, is purely statutory and cannot be extended by construction to cases not provided for by the statute.

The mechanics' lien laws of the several States of the Union are in their main provisions substantially similar.

The leading idea is to secure the mechanic and material-man upon values they have directly contributed to create.

Says Mr. Phillips: "The lien of the mechanic   *   *   * is a remedy in the nature of a charge on land given by statute to the persons named therein, to secure a priority or preference of payment for the performance of labor or supply of materials to buildings or other improvements to be *enforced against the particular property in which they have become incorporated* in the manner and under the limitations therein expressly provided." Phillips on Mechanics' Liens, 15.

Courts have construed these statutes most liberally, so as to include incidental labor where it has become incorporated with and contributed to the value of the property sought to be charged with the lien.

In the case of *Hill* v. *Newman*, 38 Penn. St. 151, the statute was held to include the work of a teamster who had hauled the lumber used in the erection of a building.

In the case of *Knight* v. *Norris*, 13 Minn. 473, the statute was held to include the architect who furnished plans and specifications for and superintended the work.

But in each of these cases the lien was for work and labor which became incorporated with and a part of the property sought to be charged with the lien.

The lien provided for by section 4 above quoted is for work and labor "in or upon any mine, lode or deposit," and for materials furnished "to be used in or about any mine, lode or deposit." This language fixes clearly the relation which the work and labor must sustain to the property sought to be charged. It contemplates only such labor or material as has been performed and furnished in the development, improvement or conservation of the mine, which has become incorporated with the mine and constitutes a part of its value. To give a lien for work or labor not performed, in the language of the section, "in or upon the mine," would not be construction, but judicial legislation. The hauling of ores by the petitioner from the mine

to the quartz mill can in no just sense, within the meaning of this statute, be regarded as work and labor performed "in or upon the mine." His labor so performed has in no degree become incorporated with it or, *per se*, enhanced its value. The equity upon which the lien is founded does not exist. He could as well ask it upon any other property of the defendant.

As to two hundred and thirty-three dollars of the petitioner's claim, the court below decreed a lien, and as to two hundred and eighteen dollars of the claim it entered a separate decree of indebtedness and awarded execution thereon.

The proceeding to enforce a mechanic's lien is purely statutory, and we know of no provision which can be construed to authorize the court to enter up a decree for a part of the claim independent of the petitioner's right to a lien.

The decree of the court below is reversed and the cause remanded.

*Reversed.*