**In re Ralph W. WALKER, Debtor,**

**Stetson Ridge Associates, Ltd., and TRI–C Construction Co., Inc., Plaintiff/Appellants/Cross–Appellees,**

v.

**Ralph W. Walker,**
**Defendant/Appellee/Cross–Appellant.**

No. CIV.A. 04–F–2001.

United States District Court,
D. Colorado.

May 23, 2005.

Kent Howard Borges, Stephen Andrew Hess, Sparks, Willson, Borges, Brandt & Johnson, PC, Colorado Springs, CO, for Appellants.

Peter J. Lucas, Appel & Lucas, P.C., Denver, CO, for Appellee.

### ORDER ON APPEAL
### OF BANKRUPTCY
### COURT ORDERS

FIGA, District Judge.

This matter comes before this Court on the appeal by plaintiffs Stetson Ridge Associates, Ltd. ("Stetson Ridge") and Tri–C Construction Company Co., Inc. ("Tri–C"), and the cross-appeal by debtor Ralph W. Walker, from an order entered by the Bankruptcy Court on September 17, 2004 after trial in an adversary proceeding pending in Walker's Chapter 7 bankruptcy case. After full briefing by all parties the case was assigned by random draw to the undersigned judge on April 6, 2005. The Court has determined that oral argument of the appeal will not materially assist the Court in its ruling.

### FACTUAL BACKGROUND

The parties do not appear to contest the factual findings entered by the Bankruptcy Court following the trial held before it on August 2–5, 2004. Thus, the following facts are taken primarily from that court's ruling (ROA, Doc. 55).[1]

Debtor Ralph W. Walker was one of the principals, together with Patrick Riley, of a now defunct construction subcontractor known as Springs Construction ("Springs"). Springs was the initial subcontractor for foundation concrete placement and construction of structural slabs on a construction project on which plaintiff Tri–C was the general contractor and plaintiff Stetson Ridge was the owner. Prior to terminating its business, Springs was paid $671,846 by plaintiffs on this job, of which $342,386.33 was in turn paid by Springs to its suppliers, leaving funds of $329,459.67 unaccounted for.

---

**1.** The Record on Appeal ("ROA") in this case consists of one volume, containing pleadings, filings and orders from the Bankruptcy Court numbered by document number. This Court did not receive a transcript of the trial in the adversary case.

Springs filed a bankruptcy case as did its two owners (ROA, DOC 55 at 2). Walker filed his Chapter 7 bankruptcy case in December 2002. Apparently, because certain suppliers of material or labor services to Springs were not paid, plaintiffs alleged in this adversary proceeding brought in Walker's Chapter 7 case that they had incurred additional costs of $41,440.42 to pay those subcontractors as of the time of trial before the Bankruptcy Court, and that they have been exposed to another $135,547.31 based on then pending mechanics' lien cases in state court.

Plaintiffs claimed in the adversary proceeding that debtor Walker should not be discharged from their claim for the liability they had incurred and for the unpaid mechanics' liens based on 11 U.S.C. § 523(a)(4). That statute provides that a discharge under section 727 of the Bankruptcy Code does not apply to an individual debtor for any debt "for fraud or defalcation while acting in a fiduciary capacity .…" According to plaintiffs, debtor Walker stood in a "fiduciary capacity" to them by operation of the so-called Colorado Mechanics' Lien Trust Fund Statute, C.R.S. § 38–22–127. That statute states in pertinent part:

> All funds disbursed to any contractor or subcontractor under any building ... contract or on any construction project *shall be held in trust* for the payment of the subcontractors, laborer[s] or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, ... under the provisions of this article and for which such disbursement was made.

C.R.S. § 38–22–127(1) (emphasis added) (*see* ROA, Doc 55 at 2, n. 2).

Debtor Walker offered three defenses to plaintiffs' claim, described by the Bankruptcy Court as follows: (1) debtor asserted that he could not be held personally liable for a violation of the above statute under the authority of *Leonard v. McMorris,* 63 P.3d 323 (Colo.2003); (2) there was no factual basis on which to find that Springs breached the Mechanics' Lien Trust Fund Statute by misapplying funds, and (3) as a matter of law, plaintiffs did not have standing to assert a violation of the Colorado Mechanics' Lien Trust Fund Statute. (ROA, Doc. 55 at 3).

Following the trial and post-trial briefing, the Bankruptcy Court issued its Findings of Fact, Conclusions of Law and Ruling on September 17, 2004 (ROA, Doc. 55). The Bankruptcy Court ruled that the decision in *Leonard v. McMorris* does not insulate debtor Walker from personal liability (*Id.,* at 3–4); that the inability of Springs and its principals to account for the proper disposition of funds entrusted to them constitutes a breach of fiduciary duty (*id.,* at 4); however, the Mechanics' Lien Trust Fund Statute does not confer standing on an owner or general contractor of a project so as to create a fiduciary relationship on which to base a denial of dischargeability under 11 U.S.C. § 523(a)(4). Accordingly, the Bankruptcy Court denied plaintiffs' request for a judgment of nondischargeability.

**THE PARTIES' APPEALS**

Plaintiffs appeal the Bankruptcy Court's ruling that they do not have "standing" under the Mechanics' Lien Trust Fund Statute and therefore did not stand in a fiduciary relationship with debtor Walker. Walker cross-appeals the Bankruptcy Court's ruling that he is not shielded from personal liability by the ruling in *Leonard v. McMorris, supra.*[2] Neither party ap-

---

**2.** In his appellate brief to this Court, Walker refers to a separate adversary case captioned

*Lafarge West, Inc., v. Riley and Walker,* Adversary Proceeding No. 03–1082, which was con-

peals from the ruling regarding the amounts of the non-payment by Springs of funds disbursed to it, or that such non-payment is a breach of fiduciary duty. The parties appear to agree that the legal issues presented to this Court as matters of law are reviewed *de novo*, and findings of fact are set aside only if they are clearly erroneous (Appellants' Brief at 3–4; Appellee's Brief at 2).

## ANALYSIS

The Court first addresses debtor Walker's cross-appeal, for if he is correct that he has no personal liability under the Colorado Mechanics' Lien Trust Fund Statute, the issue of dischargeability in his personal bankruptcy would be decided and the standing of the plaintiffs under the statute would be rendered moot.

1.  *Debtor's personal liability under C.R.S. § 38–22–127(1)*

█ In rejecting Walker's argument that he is not subject to personal liability, the Bankruptcy Court stated that for many years the Colorado Mechanics' Lien Trust Fund Statute has been interpreted to hold personally liable those officers of a corporate subcontractor who have controlled the finances and actually engaged in conduct "constituting the statutory breach of trust." (ROA, Doc. 55 at 3). In support of this statement, the Bankruptcy Court ruling cites to *Flooring Design Associates, Inc. v. Novick*, 923 P.2d 216, 221 (Colo.App.1996); *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo.App.1988) and *In re Regan*, 311 B.R. 271 (Bankr.D.Colo. 2004). The Bankruptcy Court also found that debtor Walker, together with fellow owner Patrick Riley, controlled all decisions concerning the cash, management

and operation of Springs (ROA, Doc. 55 at 3).

As noted, Walker argued that despite the facts found and the line of cases cited by the Bankruptcy Court, the recent decision in *Leonard v. McMorris, supra*, which limited personal liability of a corporate owner under the Colorado Wage Claim Act, C.R.S. § 8–4–101 *et seq.*, changed the rule of personal liability for corporate owners. The Bankruptcy Court rejected the applicability to this case of the holding in *Leonard v. McMorris, supra*, concluding that the decision in that case turned on the definition of the word "employer" as used in the Colorado Wage Claim Act, and did not establish a general rule limiting the personal liability of corporate owners under other Colorado statutes. *Id.* at 4. To the same effect is the recent decision in *In re Regan, supra*.

This Court agrees with the Bankruptcy Court that the decision in *Leonard v. McMorris* cannot be read as broadly as the debtor argues in this case. Nothing in that decision suggests that the Colorado Supreme Court intended to adopt a broad rule insulating corporate officers from liability in general, or in mechanics' lien cases specifically or by inference, in abrogation of the general corporate law decisions cited above. It is clear from the opinion in *Leonard v. McMorris* that the result there is based on the Court's construction of the definition of the word "employer" as that word is used in the Colorado Wage Claim Act and that holding cannot be extended to the Colorado Mechanics' Lien Trust Fund Statute at issue here, as debtor suggests.

Accordingly, the Court affirms that portion of the Bankruptcy Court ruling holding that debtor Walker could be held per-

solidated with the instant case for trial before the Bankruptcy Court in which a similar ruling was entered. The appeal of that case has

been assigned a different appellate docket number in this Court, but has been assigned to this Court.

sonally liable under C.R.S. § 38–22–127(1) and therefore subject to a judgment of nondischargeability.

### 2. *Plaintiffs' standing under C.R.S. § 38–22–127(1)*

The Bankruptcy Court rejected other language found in some of these same cited cases holding or suggesting that the owner of the project has "standing" to sue under the statute. The Bankruptcy Court also rejected a bankruptcy case which expressly upheld the right of an owner to seek a judgment of nondischargeability in the bankruptcy case of a defaulting subcontractor.

In the earliest of this line of cases, the Bankruptcy Court expressly held that the owner of property on which a gravel road was to be built had "standing" under C.R.S. § 38–22–127(1) to contest the dischargeability of the subcontractor-debtor under 11 U.S.C. § 523(a)(4). *See In re Specialized Installers, Inc.,* 12 B.R. 546, 550–51 (Bankr.Colo.1981). In that decision, the Bankruptcy Court found that C.R.S. § 38–22–127(1) "is unambiguous in its creation of a trust relationship." 12 B.R. at 551. In reaching its conclusion the Bankruptcy Court held that:

> It is of no moment that the property owner seeks to enforce the trust rather than a subcontractor.... The property owner clearly faces potential double payment. The subcontractor is protected by the mechanic's lien statute itself, [C.R.S. § 38–22–101 *et seq.*]. Thus, it is

the property owner who is the principal beneficiary of the statutory trust.

*Id.* The Bankruptcy Court ruled there that "[t]he Debtor clearly committed a defalcation while acting as a fiduciary. The debt owed Climax [the owner] is nondischargeable ...." 12 B.R. at 555.[3]

Similarly, in state cases applying C.R.S. § 38–22–127(1) to situations involving claims against a defalcating subcontractor, the Colorado Courts of Appeals have indicated a right of action in the owner. *See Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo.App.1988), holding the 50 percent owner of a general contractor personally liable to the project owner under the statute; *see also Flooring Design Associates, Inc. v. Novick,* 923 P.2d 216 (Colo. App.1995), which describes the statute as follows:

> [B]y its language it extends to "all funds disbursed" and to "any" building or construction project. Its purpose is to protect homeowners, laborers, and providers of construction materials from dishonest or profligate contractors. *People v. Collie,* 682 P.2d 1208 (Colo. App.1983). To meet this purpose, it imposes duties on the contractors to see that the subcontractors are paid.

923 P.2d at 219.

In *Collie, supra,* the Colorado Court of Appeals described the purpose of the statute in the context of a criminal prosecution for theft, which is provided for in subsection 5 of the statute.[4] The *Collie* opinion

---

**3.** In reaching this result, the Bankruptcy Court relied on the Tenth Circuit decision in *In re Romero,* 535 F.2d 618 (10th Cir.1976). Although that case found a debt nondischargeable by the operation of a New Mexico statute that provided for the revocation of a subcontractor's license if he fails to use entrusted funds to pay suppliers and materialmen, it is instructive on the issue presented here. In *Romero,* the Tenth Circuit not only found that the New Mexico statute created a

fiduciary relationship that when breached gave rise to a nondischargeable debt, but it also found that the fiduciary duty ran to the owner of the project. 535 F.2d at 621–22.

**4.** Subsection 5 of the Colorado Mechanics' Lien Trust Fund Statute provides: "Any person who violates the provisions of subsections (1) and (2) of this section commits theft, as defined in section 18–4–401, C.R.S."

states that the purpose of the statute "is to protect homeowners, laborers, and materialmen from dishonest or profligate contractors by requiring all contractors to hold in trust their customers' advance payments received if any independent laborers or materialmen will be necessary to complete a particular job." 682 P.2d at 1210.

The Bankruptcy Court in the instant case did not follow the precedent from its own court, nor the above line of cases, apparently reasoning that since none of them was decided by the Colorado Supreme Court they were not binding upon it, and it was the Bankruptcy Court's function to "predict how the state's highest court" would interpret the statute (*See* ROA, Doc. 55 at 6, n. 6). The Bankruptcy Court also appears to have relied in part on the decision of the Tenth Circuit in *In re Young*, 91 F.3d 1367 (10th Cir.1996) (*See* ROA, Doc. 55 at 6). In that case, the Tenth Circuit held that a breach of a general fiduciary duty is not sufficient to support a determination of nondischargeability under 11 U.S.C. § 523(a)(4). Rather, the breach of fiduciary duty required by 11 U.S.C. § 523(a)(4) to render a debt nondischargeable must be breach of an express or technical trust. 91 F.3d at 1371.

Reading the statute literally and in a vacuum, the Bankruptcy Court's interpretation of C.R.S. § 38–22–127(1) is arguably not unreasonable. However, that construction fails to address precedent to the contrary, including cases from the state's appellate court, interpreting that state statute. Such precedent offers a cogent view of how the statute should be read. Had the Bankruptcy Court here provided some persuasive analysis explaining the basis for its prediction as to how and why the Colorado Supreme Court would so rule on the issue, this Court would be more inclined to accept its premonition, particularly since the Bankruptcy Court is specialized in this area. But the reasoning informing the Bankruptcy Court's decision here seems in conflict with the very cases it cites to.

■ First, as the Bankruptcy Court itself recognized, cases decided after *Young* have expressly held that the trust created by C.R.S. § 38–22–127(1) is indeed an "express or technical" trust, within the holding of that case (ROA, Doc. 55 at 6), citing to *In re Storie*, 216 B.R. 283 (10th Cir. BAP 1997). *See also In re Regan, supra,* 311 B.R. at 275, ("Colorado courts have held that the TFS [the Colorado Mechanics' Lien Trust Fund Statute, C.R.S. § 38–22–127(1) ] is unambiguous in its creation of a similar statutory fiduciary relationship."). Here an express or technical trust has been imposed by state law. Thus, neither *Young* nor other case law support a ruling that the debtor in the instant case does not have a trust relationship that can give rise to a fiduciary duty, the breach of which can render the debt nondischargeable.

■ Second, the Bankruptcy Court simply concludes that the fiduciary relationship created by C.R.S. § 38–22–127(1) is between a "contractor or subcontractor," on the one hand, and "subcontractors, laborer[s] or materials suppliers," on the other hand, but that it does not run to "owners" or "general contractors" such as plaintiffs (ROA, Doc. 55 at 6). In reaching this conclusion, the Bankruptcy Court ruling merely paraphrases the statutory language. But in so doing, it does not distinguish or explain its rejection of the line of state court cases cited above which found that the statute allows for standing on the part of the owner, and it disregards precedent from its own court and the Tenth Circuit that long ago held that an owner is entitled to a judgment of nondischargeability against a debtor who violates C.R.S. § 38–22–127(1), or the similar New Mexico

statute relied upon in *In re Romero, supra.*

Finally, in discussing the statutory language, the Bankruptcy Court states that the express beneficiaries are listed in the statute, and are described by the phrase "funds ... shall be held in trust for the payment of ... subcontractors, laborer[s] or materials suppliers." (ROA, Doc. 55 at 6 and n. 7). The Bankruptcy Court's emphasis on the language of the statute that says the funds shall be held in trust for "the payment of" certain categories of persons, ignores the reality that while the funds are to be held for payment to the specified categories of persons, the beneficiaries of such payments are a broader group of persons than just the payees themselves, and that the beneficiaries may include the owner of the project and the general contractor. The statute itself does not preclude such a reading protecting those exposed to liability as a result of such a breach of trust.

No indication is given by the Bankruptcy Court as to why Colorado's Supreme Court would reject the body of precedent consistently interpreting the statute as plaintiffs urge. Accordingly, reviewing this case *de novo,* as this Court must do, it cannot agree with the Bankruptcy Court that the Colorado Supreme Court, if faced with this question, would hold that an owner or general contractor does not have standing under C.R.S. § 38–22–127(1). Moreover, this Court cannot agree that in the circumstances presented here, a judgment of nondischargeability is not permitted according to 11 U.S.C. § 523(a)(4).

**CONCLUSION**

For the reasons set forth above, the Order of the Bankruptcy Court entered on September 17, 2004 is REVERSED, to the extent it dismisses the claims of plaintiffs on their claim that the debts are nondischargeable under 11 U.S.C. § 523(a)(4),

and it is AFFIRMED to the extent it holds that debtor Walker may be held personally liable in these circumstances under C.R.S. § 38–22–127(1). The matter is REMANDED to the Bankruptcy Court for further proceedings consistent with this ORDER, including a determination of the amount of the nondischargeable debt.