**In re Jeffrey Shawn REGAN and Kerrie Marie Regan, Debtors.**

**Fowler & Peth, Inc., a Wyoming corporation, Plaintiff–Appellant,**

**v.**

**Jeffrey Shawn Regan and Kerrie Marie Regan, Defendants–Appellees.**

No. 06SA286.

Supreme Court of Colorado,
En Banc.

Feb. 5, 2007.

As Modified on Denial of Rehearing
Feb. 26, 2007.*

* Justice Rice, Justice Coats and Justice Eid would have granted the petition.

Law Offices of Stephen Berken, Stephen E. Berken, Jennifer O. Pielsticker, Denver, Colorado, Attorneys for Jeffrey Shawn Regan and Kerrie Marie Regan.

Brown, Berardini & Dunning, P.C., Brian J. Berardini, Harvey L. Kramer, Denver, Colorado, Attorneys for Fowler & Peth, Inc., a Wyoming corporation.

Lichtenfels, Pansing & Miller, P.C., Robert H. Miller, David B. Law, W. Andrew Figel, Denver, Colorado, Attorneys for Amici Curiae Crescent Electric Supply Company; Hercules Industries, Inc.; K & W Metal Fabricators, Inc., d/b/a Weather Guard Building Products, Inc.; Shelter Products, Inc.; and White Cap Construction Supply, Inc.

Preeo, Silverman, Green & Egle, P.C., Gilbert R. Egle, Denver, Colorado, Attorneys for Amici Curiae American Subcontractors Association, Inc.; and American Subcontractors Association of Colorado.

Justice MARTINEZ delivered the Opinion of the Court.

We agreed to answer a certified question from the Tenth Circuit Court of Appeals determining whether a claimant must have a properly perfected lien or still be able to file such a lien under the time limitations provid-

ed by the Colorado mechanics' lien statutes, sections 38–22–109 and 110, to seek access to moneys held in trust under section 38–22–127 of the Colorado Revised Statutes. We hold that the procedural requirements for perfecting a lien contained in sections 38–22–109 and 110 do not apply to claims against money held in trust under section 38–22–127.

The General Mechanics' Lien laws [1] provide three methods to protect persons who add value to property. One method of statutory protection is to allow claims against a trust fund, held by contractors, for the benefit of subcontractors, laborers, or material suppliers under the Trust Fund Statute.[2] Another method created by the General Assembly to ensure payment to contractors, laborers, or material suppliers is through the process of attaching and perfecting a lien against the property they have improved. Finally, the General Assembly created a process through which a contractor can post a bond against which claims can be made.

These three separate methods achieve one overall purpose; they ensure that laborers and material suppliers are paid for the value they add to property. We therefore construe the plain meaning of the Trust Fund Statute in a manner consistent with the statutory scheme of the General Mechanics' Lien laws. We conclude that the Trust Fund Statute protects subcontractors, laborers, and material suppliers who add value to property but are unable to recover monies owed to them through the lien claim process.

## I. Facts and Procedural History

According to the findings of the Bankruptcy Court and the District Court, Jeffrey and Kerrie Regan were the sole owners and principals of Eagle Roofing Systems, Inc. ("Eagle"). Eagle installed and repaired roofs for several home developers in the Denver metro area. Fowler & Peth, Inc. ("Fowler") supplied roofing materials to Eagle according to the terms of a credit agreement between the parties. Fowler's materials were incorporated into various separate properties (at issue

in the bankruptcy proceeding), giving Fowler the potential right to file mechanics' liens against those properties. Fowler chose not to file any liens, though it was not fully paid by Eagle for those materials. Eagle, however, was fully paid by the owner or builder of each of the properties.

During its relationship with Fowler, Eagle began to experience financial difficulties. To improve cash flow, rather than pay Fowler's invoices with the money received from each project, Eagle began to pay their oldest invoices first. In addition, Eagle did not maintain separate records of account for each project. Finally, the Regans, as sole owners and principals, caused Eagle to pay some of their own personal expenses from monies received by Eagle in payment for completed roofing projects. As a result, Eagle was fully compensated for all the construction projects it worked on, but Fowler was not. The Regans then filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Colorado. As of the date of the bankruptcy petition, the Regans owed Fowler $48,185.03.

The bankruptcy court judge held that the debt owed to Fowler was nondischargeable because the Regans failed to hold project funds in trust under Colorado's Mechanics' Lien Trust Fund Statute. *In re Regan*, 311 B.R. 271 (Bankr.D.Colo.2004). On appeal, the United States District Court for the District of Colorado reversed, ruling that, because Fowler had not actually filed or perfected any liens against each of the various properties in which its materials were incorporated by Eagle, it was not entitled to the protection of the Trust Fund Statute. *In re Regan*, 326 B.R. 175, 178–79 (D.Colo.2005). The District Court, relying principally on an Oklahoma case, held that in order to invoke the protection of the Trust Fund Statute, a material supplier must have a perfected lien, or presently be able to perfect a lien. *Id.* Because the time limitations placed by Colorado law on lien claims had expired, Fowler had no present ability to perfect liens against

---

1. Located at sections 38–22–101 to –133, C.R.S. (2006), the most current version is cited here, though the laws have evolved throughout their existence, spanning over one hundred years.

2. § 38–22–127, C.R.S. (2006).

the properties where its materials had been used, and for which it had not been fully compensated. Fowler appealed to the Tenth Circuit Court of Appeals and this certified question followed.

## II. Analysis

 We look to the plain language of a statute to effectuate the chosen statutory scheme as intended by the General Assembly. *Denver Pub. Co. v. Bd. of County Comm'rs of County of Arapahoe*, 121 P.3d 190, 195 (Colo.2005) (citing *Sooper Credit Union v. Sholar Group Architects, P.C.*, 113 P.3d 768, 771 (Colo.2005)). The intent of the General Assembly, as expressed in the language of the statute, is effectuated by considering the statutory scheme as a whole and giving a consistent, harmonious, and sensible effect to each individual section. *See Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo.2006) (citing *Charnes v. Boom*, 766 P.2d 665, 667 (Colo.1988)). When determining the intent of a statute, we must presume that "[a] just and reasonable result is intended." § 2–4–201(1)(c), C.R.S. (2006). Finally, "[w]ords and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly." § 2–4–101, C.R.S. (2006). Thus, the placement of the Trust Fund Statute within the framework of the General Mechanics' Lien laws plays an important role in our determination that the lien claim procedures should not be imported into trust fund claims.

 The Trust Fund Statute, by its plain language, offers a separate method of protection from contractors who are paid by homeowners, but do not fully compensate their creditor subcontractors, laborers, and material suppliers. However, if lien claim procedures were imported into trust fund claims, homeowners would face a flurry of liens encumbering their property from subcontractors, laborers, and material suppliers waiting to be paid by principal contractors. Importantly, those same subcontractors, laborers, and material suppliers would, under certain common circumstances, be left without any remedy under the mechanics' lien laws to recover the value they have added to property.[3] Finally, the Regans, as well as many other contractors, would be unjustly enriched by their own malfeasance. We therefore conclude that the plain language of the Trust Fund Statute and the General Mechanics' Lien statutory scheme prevent lien claim procedures from being imported into trust fund claims.

In reaching our conclusion, we first examine the General Mechanics' Lien laws. Next, we examine the Trust Fund Statute in particular. Third, we explain how our holding is consistent with the entire statutory scheme. Finally, we will briefly address the Oklahoma case law on which the District Court based its decision. This examination reveals that, in order to give effect to the language and intent of the General Mechanics' Lien laws, trust fund claims must be separate from, though related to, lien claims.

### A. The General Mechanics' Lien Laws

A mechanics' lien is a statutorily-created right to file a claim against property, available to a broad category of persons who furnish labor or materials adding value to that property. § 38–22–101(1), C.R.S. (2006). Section 38–22–101 is titled in part: "liens in favor of whom." It states that liens are created only in favor of those persons who furnish supplies or labor for value to property:

> [E]very person who furnishes or supplies laborers . . . materialmen, contractors, subcontractors, builders . . . *shall have a lien* upon the property upon which they *have furnished* laborers or supplied machinery, tools, or equipment or rendered service . . . for the value of such laborers, machinery, tools, or equipment supplied . . . .

§ 38–22–101(1) (emphasis added).

 The General Assembly has, by this language, defined a lien and identified who may have a lien. A lien is a security interest

---

3. For example, full payment by a homeowner is a complete affirmative defense to a lien. § 38–22–102(3.5), C.R.S. (2006). Also, appellants assert, and appellees do not dispute, that it is common practice for subcontractors to waive their right to a lien in order to obtain business from contractors who do not want their customers to face liens on their property.

in property; those who have a lien are laborers and material suppliers who have added value to that property. *See Barnard v. McKenzie,* 4 Colo. 251, 253 (1878) (stating that "[t]he leading idea [of Colorado's mechanics' lien laws is] to secure the mechanic and materialmen upon values they have directly contributed to create"). Furthermore, a lien is created at the commencement of the work, not at the time of enforcement of the lien. *See* § 38–22–106, C.R.S. (2006) (requiring that all liens relate back to the time of the commencement of the work); *Sontag v. Abbott,* 140 Colo. 351, 358, 344 P.2d 961, 964 (1959) (liens begin at the commencement of the work); *cf.* 1C Cathy Stricklin Krendl & James R. Krendl, *Colo. Prac. Series, Methods of Practice* § 48.6 (5th ed.2006) (noting that to preserve a lien, a claimant must file notice and then perfect the lien).

■ A lien created at the commencement of work preexists the claim that is made to enforce the lien. *See* § 38–22–105.5(2), C.R.S. (2006) (including the words on the notice form to property owners "[pursuant to lien law] you [may] have an affirmative defense in any *action to enforce a lien* ") (emphasis added). For this reason, the mechanics' lien statutes use the word "lien" to describe something different from claims to enforce the lien. For instance, section 38–22–101(5) talks about "claimants who establish the right to a lien or claim under any of the provisions of this article." § 38–22–101(5), C.R.S. (2006) (emphasis added). Another example illustrates this point further: section 38–22–103(4) describes what a laborer or material supplier may "file with his or her *lien claim.*" § 38–22–103(4), C.R.S. (2006) (emphasis added). Here the statute qualifies the word "lien" with "claim" to describe the distinct status of the lien (i.e., it has now been claimed and filed). In this way, the General Assembly meant for a "lien" to be defined by section 38–22–101, and for the remaining provisions to describe the process of enforcing the lien. Once a lien has been created, the claim is an equitable enforcement action to enforce the lien.

■ We have long construed our mechanics' lien laws liberally, according to equitable principles. *Compass Bank v. Brickman Group, Ltd.,* 107 P.3d 955, 958 (Colo.2005) (citing *Buerger Inv. Co. v. B.F. Salzer Lumber Co.,* 77 Colo. 401, 406–07, 237 P. 162, 164–65 (1925) and *Darien v. Hudson,* 134 Colo. 213, 302 P.2d 519 (1956)). The mechanics' lien laws are liberally construed because they were designed to prevent the unjust enrichment of property owners. *Compass Bank,* 107 P.3d at 958. Consistent with these equitable principles and the General Assembly's purpose, we avoid needless and inequitable losses of a mechanic's or material supplier's security interest. *Id.*

The General Mechanics' Lien statutes created the lien claim process over one hundred years ago. *See Williams v. Uncompahgre Canal Co.,* 13 Colo. 469, 22 P. 806 (1889). In 1975, two additional claims were created to protect subcontractors, laborers, or material suppliers: (1) claims may be made against a trust fund created by section 38–22–127, C.R.S. (2006) [4]—the Trust Fund Statute; and (2) a contractor can post a bond and a subcontractor, laborer, or material supplier can either claim against the lien or the bond pursuant to section 38–22–129(2), C.R.S. (2006). 1975 Colo. Sess. Laws 1420, 1420–26.

All three alternatives allow subcontractors, laborers, or material suppliers to satisfy legitimate claims for compensation and are merely separate methods for satisfying those claims. *First Commercial Corp. v. First Nat'l Bancorp.,* 572 F.Supp. 1430, 1434 (D.Colo.1983); *Lafarge West, Inc. v. Riley (In re Riley),* No. 02–29529, 2004 WL 2300460, at *11 (Bankr.D.Colo.2004); Michael E. Romero, *The Mechanics' Lien Trust Fund Statute: An Underused Tool in Civil Litigation and Bankruptcy Cases,* 31 Colo. Law. 55, 57 (2002). Unlike lien claims, which are asserted against property, these newer trust fund and bond claims are made against contractors. In this way, the mechanics' lien laws form three separate methods for achieving one overall purpose: ensuring that laborers and material suppliers are paid for their

---

**4.** The General Mechanics' Lien statutes, including both section 38–22–101(1) and the Trust Fund Statute, were amended in 2000 to add the word "laborer." 2000 Colo. Sess. Laws 204, 211.

contributions to the improvement of property.

## B. Trust Fund Statute

We turn now to the language of the Trust Fund Statute. The Trust Fund Statute contains five subsections, each addressing different aspects and obligations of claimants and contractors. At issue before us today is subsection one.[5] Subsection one defines who is entitled to the protection of the statute. Trust fund claims, according to the plain language of the statute, can be made by two groups: subcontractors, laborers, or material suppliers who either (1) have a lien or may have a lien against property or (2) claim or may claim against a principal or surety. § 38–22–127(1).

The similarity of the language used in the Trust Fund Statute in subsection one and the language in section 38–22–101(1) indicates that the General Assembly meant for these two sections to be read together. In other words, those who have a "lien" under section 38–22–127(1) are defined by section 38–22–101(1): an interest laborers and material suppliers have in a property to which they added value at the request of the owner or the owner's agent, such as the contractor. This is distinct from those who have a "perfected lien" as defined by sections 38–22–109 and 110: those who have met the timing requirements necessary to enforce a lien.

By its plain language, the Trust Fund Statute allows subcontractors, laborers, and material suppliers to assert claims directly against contractors if they have a "lien" (i.e., added value to a property). In contrast, a "perfected lien" (a lien secured by following lien claim procedures) secures payment to subcontractors only indirectly, by encumbering the property and forcing the property owner to either pressure the contractor to pay the subcontractor, or make a double payment to the lien holder. The Trust Fund Statute is in this way both related to and separate from the lien claim statutes.

Trust fund claims are separate from lien claims in part because of the different rights that property owners have under each procedure. A property owner cannot file a lien claim against his or her own property. *Damrell v. Creagar*, 42 Colo.App. 281, 599 P.2d 262 (1979). However, property owners *are* direct beneficiaries of the Trust Fund Statute to prevent the possibility of having to make double payments. *In re Walker*, 325 B.R. 598, 602 (D.Colo.2005). When an owner pays a contractor and then a subcontractor places a lien on the owner's property, the owner is faced with the possibility of having to also pay the subcontractor to clear the lien cloud from the property. *Id.*

In contrast, the Trust Fund Statute assures property owners that they will not have to pay a second time to satisfy the subcontractor. In fact, the primary concern of the legislature, at the time the Trust Fund Statute was passed, was the protection of *property owners* against unscrupulous contractors. Transcript of Audio Tape: Hearing on H.B. 1510 Before the H. Bus. Affairs Comm., 1975 Leg., 50th Gen. Assem., 1st Reg. Sess. (Colo. Apr. 910, 1975) (on file with Colorado State Archives). As beneficiaries, property owners are able to enforce the Trust Fund Statute against a contractor separate from the lien claim laws. *Id.; see People v. Collie*, 682 P.2d 1208, 1210 (Colo. App.1983) (noting that the purpose of the Trust Fund Statute "is to protect *homeowners*, laborers, and materialmen from dishonest or profligate *contractors* ") (emphasis added); *First Commercial Corp.*, 572 F.Supp. at 1434 (noting that the statute creates a separate form of protection because any other interpretation would render either lien claims or trust fund claims superfluous).

To further understand why lien claim procedures are not part of trust fund claims, we look to the third alternative provided by the mechanics' lien laws—bond claims. The General Assembly wrote the bond claim statutes at the same time as the Trust Fund

---

5. "All funds disbursed to any contractor or subcontractor ... shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made." § 38–22–127(1).

Statute. 1975 Colo. Sess. Laws 1420, 1420–26. However, the General Assembly specifically imported the lien claim procedure into the bond claim procedure. Section 38–22–133 specifically says that the statute of limitations applicable to lien foreclosures shall apply to bond claims:

> When a bond or undertaking is filed ... the person filing the original mechanic's [sic] lien may bring an action upon the said bond or undertaking. Such action shall be commenced within the time allowed for the commencement of an action upon foreclosure of the lien, and *the statute of limitations applicable to a lien foreclosure shall apply to the action upon the bond* or undertaking as it would had no bond or undertaking been filed.

§ 38–22–133, C.R.S. (2006) (emphasis added). If the General Assembly wanted lien claim procedures to apply to trust fund claims, it could have included lien claim procedures in the Trust Fund Statute at the same time, and in the same manner, as the bond claim statute. It did not. We cannot read the Trust Fund Statute to include lien claim procedures where no language supporting such a conclusion can be found. *See People v. Cross*, 127 P.3d 71, 73 (Colo.2006) (noting that it is improper for this Court to add language to a statute in contravention of legislative intent).

Although the Trust Fund Statute could be read narrowly, as the district court did, such a reading cannot be reconciled with the General Assembly's intent to protect subcontractors, laborers, material suppliers, and homeowners from unscrupulous contractors. Further, the technical phrase "have a lien or may have a lien" must be read according to the technical meaning given by the mechanics' lien laws. § 2–4–101. A "lien" is defined by the General Assembly in section 38–22–101(1): a claim on property by a person who has added value to that property. Therefore, a trust fund claim may be made by a person who has added value to a property or may have added value to a property, as limited by section 38–22–101(1). A subcontractor, laborer, or material supplier's ability to make a claim under the Trust Fund Statute is thus no more or less broad than the ability to claim a lien at the time that the lien arises—when labor or materials are supplied. In this way, the Trust Fund Statute works harmoniously with the entire statutory scheme governing the General Mechanics' Lien laws.

## C. Harmonious Reading of the Statute

■ Our holding here ensures that the Trust Fund Statute is both internally consistent and consistent with the General Mechanics' Lien laws. Contrary to the Regan's arguments to the Tenth Circuit, the Trust Fund Statute, because it is separate from lien claims, does not thereby keep lien claims alive for an indefinite period. For example, the agreement between the contractor and the subcontractor, laborer, or material supplier controls the timelines for the disbursement of funds. *See Chicago Lumber Co. v. Newcomb*, 19 Colo.App. 265, 275, 74 P. 786, 789 (1903) (holding that the contract controls the payment burdens imposed). Although the time limitations on the perfection of a lien, set forth in sections 38–22–109 and 110, C.R.S. (2006), do not apply to the Trust Fund Statute, trust fund claims are nonetheless limited by the applicable statute of limitations just as lien claims are limited by sections 38–22–109 and 110.[6]

---

6. Trust fund claims have a definite time limit, though this certified question does not require us to decide which limits apply. We note, however, that the revised statutes provide a statutory limitation of three years for claims related to contracts, breach of trust, or breach of fiduciary duty. *See* § 13–80–101, C.R.S. (2006) (limiting certain civil actions, regardless of the theory upon which the suit is brought, to three years; subsection(a) covers contract actions, subsection (f) covers breach of trust or breach of fiduciary duty). Trust fund claims are also subject to statutory accrual limitations as well as common law tolling doctrines. *See* § 13–80–108(4), C.R.S. (2006) (stating that a cause of action for a debt or obligation accrues on the date the debt is due; *see* annotations to § 13–80–108(4) for tolling doctrines); § 13–80–108(6), C.R.S. (2006) (stating that a cause of action for breach of contract accrues on the date the breach is discovered or should have been discovered; *see* annotations to § 13–80–108(6) for tolling doctrines). Furthermore, there is a general six year statute of limitations on actions to recover debt or to enforce the rights set forth in any instrument securing the payment of any debt. § 13–80–103.5(1)(a), C.R.S. (2006).

Treating trust fund claims separate from lien claims results in a harmonious reading of the statutes when both lien and trust fund claims are pursued. For example, a subcontractor who pursues a lien claim is not foreclosed or discouraged from also pursuing trust funds. Though a supplier who has foreclosed on a perfected lien and obtained a judgment may no longer have a lien, they nonetheless qualify for protection under the Trust Fund Statute. Because subsection one lists among those persons entitled to the statute's protection those who "claim or may claim, against a principal and surety," a person with a judgment on a foreclosed lien has "a claim." [7] § 38–22–127(1). Thus, that person is in the same position as a person who has a "lien or may have a lien" and entitled to the same protection.

## D. Case Law

The District Court relied on *In re Tefertiller*, 772 P.2d 396, 398 (Okla.1989), an Oklahoma case interpreting Oklahoma's trust fund statute, in support of its conclusion that under Colorado's statute, only a perfected lien entitles a subcontractor to assert claims against trust funds. *In re Regan*, 326 B.R. at 178–79. In *In re Tefertiller*, a federal Oklahoma bankruptcy court sent a certified question to the Oklahoma Supreme Court asking it to interpret the meaning of "lienable claims" in Oklahoma's trust fund statute, also located within its general mechanics' lien laws. 772 P.2d at 398. The Oklahoma Supreme Court determined that "lienable claims" meant that a lien must be perfected before a claimant could access trust funds. *Id.* at 399.

The differences between Colorado's and Oklahoma's statutes are significant. Most importantly, unlike the Colorado statute, Oklahoma specifically requires a *"lienable claim."* Okla. Stat. tit. 42, § 153 (1989) (emphasis added). Colorado's statute does not

require a "lien claim," only a "lien" (against property) or a "claim" (against a principle). *See* § 38–22–127(1). Second, as the *Tefertiller* court noted, the Oklahoma statute specifically references lien claims and procedures; the Colorado Trust Fund Statute does not. *Tefertiller*, 772 P.2d at 398–99; § 38–22–127, C.R.S. (2006). Finally, Oklahoma used limiting language by qualifying the word "lien" in two ways: a trust fund claimant must have a lien that is *lienable* and it must be a *claim.* By contrast, Colorado uses broadening language: a trust fund claimant can have a lien "or *may* have a lien." § 38–22–127(1) (emphasis added). Colorado broadens the category of qualified trust fund claimants even further by also allowing those with claims. *Id.* These differences in plain language outweigh any similarity that both trust fund statutes have by their placement within the general lien laws.

Further, as the subsequent history of that case reveals, federal Oklahoma bankruptcy courts have limited *Tefertiller* in the bankruptcy context to hold that the fiduciary duty of a trustee-contractor is not eliminated by the failure of the beneficiary-subcontractor to perfect a lien. *See In re Manley*, 135 B.R. 137, 141 (Bankr.N.D.Okla.1992) (citing *In Re Turner*, 134 B.R. 646, 656–57 (Bankr. N.D.Okla.1991)) (noting that "[w]hether the liens ultimately proved enforceable or not is beside the point: trust funds were still received, they were still misapplied, and such misapplication still caused damage").

The Oklahoma bankruptcy courts have separated a contractor's fiduciary duty from a subcontractor's lien claim. The court in *In re Turner* held that even when a lien creditor fails to perfect a lien, the contractor-trustee may not breach his own fiduciary duty to hold trust funds so that no liens need be created at all. 134 B.R. at 656–57. The *Turner* court noted that a trustee's duty

---

**7.** Where a subcontractor brings an in personam action against a general contractor and an in rem action against the homeowner under both the lien claim and trust fund claim statutes, the normal rules of claim preclusion would apply to prevent a double payment from the general contractor or the property owner to the claimant. Furthermore, the mechanics' lien laws are construed according to equitable principles for the

purpose of avoiding unjust enrichment; those same principles would apply to prevent unjust enrichment of a claimant. *See Compass Bank*, 107 P.3d at 958, supra; *Marean v. Stanley*, 5 Colo.App. 335, 337, 38 P. 395, 396 (1894) (noting that the law does not allow a person to have more than one satisfaction of a debt but it does allow several remedies, until one satisfaction is obtained).

exists from the moment the contractor receives funds. *Id.* Thus, the court concluded, if the creditor's lien claims fail, pursuit of a lien remedy need not take away the creditor's alternative trust fund remedy. *Id.; see Tefertiller*, 772 P.2d at 398–99 (noting a statutory provision that specifically allows for trust fund claims to be pursued separately from lien claims). Thus, in a bankruptcy context, the Oklahoma statute permits claims against the trust fund even though a lien was not perfected.

### III. Conclusion

■ Because the plain language of the Trust Fund Statute and we are unwilling to import such a requirement, we answer the Tenth Circuit's question in the negative: a trust fund claimant is not required to have a properly perfected lien, or still be able to perfect a lien to seek access to money held in trust under section 38–22–127.

Justice RICE dissents, and Justice COATS and Justice EID join in the dissent.

Justice RICE, dissenting.

In an opinion that relies primarily on policy concerns rather than statutory analysis, the majority holds that any person who so much as pounds a nail or delivers a brick to a construction project has an inchoate right to a "lien" and therefore can bring a statutory claim at any time in the future against a contractor under Colorado's Trust Fund Statute. Because I think this holding is overbroad and without statutory support, I respectfully dissent.

I would answer the Tenth Circuit's question in the affirmative and hold that the language "may have a lien" in Colorado's Trust Fund Statute refers only to a claimant who is still able to file a lien under the time limitations provided by the Colorado Mechanics' Lien Statute. While I agree with the majority that the Trust Fund Statute provides an additional remedy to aggrieved subcontractors, laborers, and suppliers, the language of the Trust Fund Statute only makes sense if it is limited by the terms of the Colorado Mechanics' Lien Statute.

The majority's opinion is flawed in three fundamental ways. First, the majority broadly defines the word "lien" as simply meaning an inchoate right given to any person who adds value to property. This definition relies on a simplistic and incomplete analysis of the Mechanics' Lien Statute.

Second, the majority's opinion fails in its attempt to construe the language of the Trust Fund Statute. The majority's opinion does not make sense unless the critical phrase at issue here—"may have a lien"—is completely read out of the Trust Fund Statute. It is improper for courts to add or subtract words in a way that makes statutory language superfluous.

Finally, the majority's opinion effectively eliminates any incentive for subcontractors, laborers, or material suppliers to file liens under the Mechanics' Lien Statute. Had the General Assembly intended to create such a disincentive to the use of the Mechanics' Lien Statute in favor of an action under the Trust Fund Statute, it would have done so explicitly.

### I. Definition of Lien

The majority looks to the language in section 38–22–101(1) of the General Mechanics' Lien Statute and claims that it defines the word "lien" as simply an interest in property given to anyone who provided value to the property. Maj. op. at 1284. This definition allows anyone who worked on a construction project or sold supplies to a construction project to claim a lien without having to do anything more. The claimant would not have to take any further action, such as providing notice to the owner or even calculating an amount due, to have a Trust Fund claim. This broad definition fails for two reasons: (1) the majority relies on an overly simplified reading of a single statutory section and (2) the word "lien" is a term of art that has a particularized legislative definition.

First, subparagraph (1) of section 38–22–101 does not attempt to provide a definition of a lien as claimed by the majority. Rather, it provides a definition of a person who can file a lien and receive the benefits of a lien. In fact, the title of section 38–22–101 is "Liens in favor of whom—when filed—defini-

tion of a person." The majority uses this section out of context as providing support for its broad definition of lien. Maj. op. at 1284–85. However, the word "lien" is never actually defined in the statutory language of section 38–22–101.

The word "lien" is in fact defined by the entirety of its enabling legislative scheme. A lien requires more than just a claim of work done or materials provided. Rather, a mechanics' lien is a creature of statute and is defined by the statutory requirements put forth by the General Assembly. *See Indep. Trust Corp. v. Stan Miller, Inc.*, 796 P.2d 483, 487 (Colo.1990). Throughout our state statutes, the General Assembly has created eleven different statutory articles defining various types of property liens. *See* Title 38, Articles 2027, C.R.S. (2006). For mechanics' liens, the General Assembly adopted 34 different statutory sections defining various aspects of a mechanics' lien. §§ 38–22–101 to 133, C.R.S. (2006). This extensive statutory system demonstrates that the General Assembly intended the word "lien" to be a technical term of art that is to be defined by all the relevant statutory sections.

"Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." § 2–4–101, C.R.S. (2006). Given that the word "lien" is a technical term, we must read all the parts of its legislative scheme to arrive at a definition. This definition includes notice, filing, and time elements. § 38–22–101(3), C.R.S. (2006) (written contract requirement); § 38–22–102, C.R.S. (2006) (payment requirements); § 38–22–103, C.R.S. (2006) (attachment rules); § 38–22–105 to 105.5, C.R.S. (2006) (notice requirements); § 38–22–109, C.R.S. (2006) (lien statement requirements); § 38–22–110, C.R.S. (2006) (foreclosure requirements). In order to have a lien, a claimant must "show that he has complied with all of the essential requirements of the statute under which he claims." *Kalamath Inv. Co. v. Asphalt Paving Co.*, 153 Colo. 109, 114, 384 P.2d 938, 941 (1963) (citations omitted).

In essence, a person who works on a project or provides materials to a project is only "eligible to claim a mechanics' lien under the statute." Jack Greenwald & Gilbert Egle, *Colorado Liens and Claims Handbook* § 2.1.1 (4th ed.2006); *see also* Cathy Stricklin Krendl & James R. Krendl, 1C *Colo. Prac., Methods of Practice* § 48.3 (5th ed.) ("[E]very person who performs labor or furnishes material ... is entitled to claim a mechanics' lien under the statute.").

By broadening the statutory definition of a lien in the Trust Fund Statute, the majority is attempting to provide protection to those like Fowler & Peth who have claims that would go unsecured in the bankruptcy of a disreputable contractor. The majority forecasts other potential evils that may occur if the Trust Fund Statute is read too narrowly, i.e., flurry of liens on homeowners, no full remedy for providers of value to property, and unjust enrichment of bad actors. Maj. op. at 1284. However, a court cannot mend a statutory problem by judicial fiat. *Common Sense Alliance v. Davidson*, 995 P.2d 748, 755 (Colo.2000) ("We, therefore, must resist the temptation to change the statutory language, and rather must leave any repair to the General Assembly or the electorate.").

In any event, the Mechanics' Lien Statute already provides several opportunities for aggrieved subcontractors, laborers, or suppliers to seek redress. For example, Fowler & Peth could have timely filed for a mechanics' lien or they could have required security on the credit sale of supplies. In addition, they could have timely filed a Trust Fund claim while they still had time to file a mechanics' lien. However, they made a business decision not to take advantage of any of these remedies. It is not now the job of this court to expand the technical meaning of the Trust Fund Statute to create an additional new and unrestrained remedy for subcontractors, laborers, and suppliers in Fowler & Peth's position.

## II. Statutory Language Must Retain Some Meaning

It is improper in statutory construction for courts to add or subtract words that contravene legislative intent. *People v. Cross*, 127 P.3d 71, 73 (Colo.2006). We should reject interpretations that cause parts of a statute to be superfluous, and should attempt to

harmonize any potentially conflicting provisions. *Id.* The majority, by its overbroad definition of lien, makes the words "may have a lien" in section 38–22–127(1) superfluous and in effect subtracts those words from the statute. In order for the language "may have a lien" to have any meaning, there must exist a situation where someone may *not* have a lien. However under the majority's definition of lien, any subcontractor, laborer, or supplier automatically has a lien just by virtue of providing value to a property. Under this definition, all subcontractors, laborers, or suppliers would fit the first part of the Trust Fund Statute as people "who have a lien." There is no one left to fit into the category of "may have a lien" or "may not have a lien."[1] Therefore, the majority's interpretation effectively subtracts the words "may have a lien" by making them meaningless.

On the other hand, the narrower interpretation that I would adopt harmonizes the language "may have a lien" with an interpretation of the Mechanics' Lien Statute that is espoused by many commentators. *See* Greenwald & Egle, *supra* at § 2.1.1; Krendl & Krendl, *supra* at § 48.3 (that one is only "entitled" or "eligible" to claim a lien but does not have a lien yet if one only does work on or provides supplies for property).

### III. Disincentive to Use Mechanics' Liens

Under today's construction of the Trust Fund Statute, the majority creates a Trust Fund claim that can be filed by any claimant at any time in the future. This effectively turns the mechanics' lien statutory scheme on its head by allowing individuals to sit on their rights and simply rely on an expansive reading of the Trust Fund Statute. Furthermore, this holding could cause chaos in the construction industry by creating a judicial disincentive for an historic legal tool for property owners, contractors, subcontractors, laborers, and suppliers.

The majority's interpretation of the Trust Fund Statute creates a statutory claim that has no time limitation. The Trust Fund Statute itself contains no internal statute of limitations for Trust Fund claims. However, the majority opinion speculates that under its broad interpretation, Trust Fund claims may face a three-year statute of limitations or maybe a six-year statute of limitations or possibly an even longer statute of limitations given tolling doctrines. Maj. op. at 1287 n. 6. Such conjecture is completely improper statutory interpretation. This court should never assume that the legislature intended to create a claim that does not have a definite statute of limitations. *See Campbell v. City of Haverhill,* 155 U.S. 610, 616, 15 S.Ct. 217, 219–20, 39 L.Ed. 280 (1895). ("[W]e have the anomaly of a distinct class of actions subject to no limitation whatever, a class of privileged plaintiffs who, in this particular, are outside the pale of the law, and subject to no limitation of time in which they may institute their actions. This cannot have been within the contemplation of the legislative power.").

In contrast to such an openended time limit, there exists a definite time limit for Trust Fund claims if we read the Mechanics' Lien Statute and the Trust Fund Statute together. Courts must construe statutes "to give effect to the General Assembly's intent and chosen legislative scheme." *Denver Pub. Co. v. Bd. of County Comm'rs of County of Arapahoe,* 121 P.3d 190, 195 (Colo.2005) (citations omitted). In construing a statute, the court reads the statute as a whole, giving sensible effect to all of its parts whenever possible. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo. 2005).

Under the Mechanics' Lien Statute, a supplier must serve a Notice of Intent to File a Lien upon the property owner and contractor

---

1. The majority reads the language "have a lien or may have a lien" as referring to "a person who has added value or may have added value to property" which is simply replacing the words "a lien" with the words "added value." However, it is still unclear who would be considered to "may have added value to property." Under the majority's broad definition, all subcontractors, laborers, or suppliers who did work or provided supplies, added value. Therefore, "may have added value to property" refers to the same group of people as "have added value." The language "may have added value" is still meaningless since everyone who "may have added value" also fits the definition of those who "have added value."

in order to have a lien. § 38–22–109, C.R.S. (2006); *see also* Greenwald & Egle, *supra* at § 2.8.4. At least ten days after serving such notice, a supplier must file a Lien Statement and a copy of the Intent to File a Lien with the county clerk and recorder. § 38–22–109(1). This filing must be done within four months of the last day materials were supplied. § 38–22–109(5). After filing, a lien's duration is only one year from the filing date unless suit is brought to foreclose the lien. § 38–22–109(8); *see also* David Wells, Terry W. Scoby & L. Jay Labe, *Mechanics' Liens, Construction Bonds and Remedies for Non-payment under Colorado Law* II24 (1990). In foreclosure, the lien will either be dismissed or converted into a judgment. § 38–22–113, C.R.S. (2006). Consequently, when the foreclosure case ends, the subcontractor, laborer, or supplier no longer has or may have a lien, and should no longer be able to use the Trust Fund Statute.

By incorporating these time limits into the Trust Fund Statute, an internal time limit is created for Trust Fund claims. Under this time limit, a general contractor would be required to hold funds in trust while all subcontractors, laborers, or suppliers can still file mechanics' liens,[2] until all filed liens have expired,[3] or until a foreclosure action is concluded on any perfected liens. The majority dismisses this overall mechanics' lien legislative scheme and instead holds that it should not be utilized for Trust Fund claims. Maj. op. at 1283–84. However, the majority's holding creates an indefinite constructive trust imposed on general contractors and gives subcontractors, laborers, and suppliers a Trust Fund claim without limit. Such a radical change to the construction industry could tie up payment funds indefinitely and slow the ability of contractors to start new construction projects. Furthermore, the specter of criminal liability from the Trust Fund Statute will be left hanging over general contractors indefinitely.

An additional consequence of the majority's opinion is that it would allow multiple causes of action on the same dispute and could lead to inconsistent judgments. "Though a supplier who has foreclosed on a perfected lien and obtained a judgment may no longer have a lien, they nonetheless qualify for protection under the Trust Fund Statute." Maj. op. at 1288. Thus, a supplier who failed to meet his burdens in a foreclosure action has another opportunity to bring a Trust Fund claim. In addition, a general contractor can fully satisfy a mechanics' lien in the course of a lien foreclosure proceeding, but then still be liable under the Trust Fund Statute and face possible criminal penalties.[4]

The most dire consequence of the majority's interpretation of the Trust Fund Statute is that it would create a disincentive for the use of the Mechanics' Lien Statute by judicial fiat. Under the majority's opinion, the Trust Fund Statute would be easier and less expensive to comply with than the Mechanics' Lien Statute. This would make compliance with the Mechanics' Lien Statute irrational. No subcontractor, laborer, or supplier would undertake all the steps of the Mechanics' Lien Statute to gain the protection of a mechanics' lien when they could simply sit on their rights and rely on the Trust Fund Statute to protect them indefinitely. Such a result would no longer make the Trust Fund "separate from, though related to" the Mechanics' Lien Statute as

---

2. This window exists at most for four months after the last day labor or materials are supplied on a project, § 38–22–109(5), or for two months after the last day labor or materials are supplied if the work is being done by the day or by piece. § 38–22–109(4).

3. Mechanics' liens expire a year from filing. § 38–22–109(8).

4. In a mechanics' lien foreclosure action by a subcontractor, laborer, or material supplier who has not been paid, a plaintiff can bring an *in rem* claim against the property owner and an *in personam* claim against the general contractor. As such, a plaintiff could receive a personal judgment against the general contractor. Similarly, the Trust Fund Statute creates a direct action, much like the *in personam* mechanics' lien action, which could result in another personal judgment against the general contractor for the same failure to pay the plaintiff. Under the majority's holding then, a general contractor could be found not liable *in personam* in a mechanics' lien foreclosure action but then liable in a later direct action under the Trust Fund Statute. However, both causes of action are essentially the same claim. Therefore, the majority's holding creates the possibility of inconsistent judgments.

claimed by the majority. Maj. op. at 1284. Rather it would supplant the whole legislative scheme for mechanics' liens.

Likewise, such an interpretation cannot be correct, given the placement of the Trust Fund Statute within the Mechanics' Lien Statute. "[P]lacement of a statute within other statutory provisions provides an indication of subject matter and legislative intent." *Fabec v. Beck*, 922 P.2d 330, 337 (Colo.1996) (citing with approval *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir.1994)). The General Assembly would not have placed the Trust Fund Statute within the Mechanics' Lien Statute if it intended for the Trust Fund Statute to supersede the mechanics' lien statutory scheme.

Mechanics' liens have been part of Colorado's statutory history for over a hundred years and have legally developed over the years to balance the interests of property owners, contractors, subcontractors, laborers, and suppliers. However, by its overly broad definition of the word "lien," the majority has adopted an interpretation of the Trust Fund Statute that would eliminate any need for the mechanics' lien process by subcontractors, laborers, or suppliers and could ultimately render the Mechanics' Lien Statute superfluous.

## IV. Conclusion

For the reasons set forth above, I believe that Colorado's Construction Trust Fund Statute applies only to claimants who have a current mechanics' lien on property or who are still able to file such a lien within the time limitations provided by the Colorado Mechanics' Lien Statute. Therefore, I dissent from the majority's answer to the Tenth Circuit's Certified Question and instead would answer the question in the affirmative.

I am authorized to state that Justice COATS and Justice EID join in this dissent.