[No. 4337.]

## THE CITY OF DENVER v. BONESTEEL.

1. **Cities and Towns—Change of Grade of Street—Measure of Damages.**

    The measure of damages to a city lot caused by a change of the grade of the street on which it abuts, after the lot has been improved in accordance with the former grade, is the difference between the market value of the lot before and after the grade was changed.

2. **Cities and Towns—Change of Grade of Streets—Damage to Abutting Lots—Liability of City.**

    Where the grade of a street is established by a city and abutting lot owners improve their property in conformity with the established grade, the city is liable for damage to such property caused by a subsequent change of the grade of the street.

*Transferred from the Court of Appeals:*

Action for damages for injury to plaintff's city lots caused by a change of grade of adjacent Ogden street and Eleventh avenue, which change was made under authority of the city of Denver.

Plaintiff is the owner of four city lots at the corner of Ogden street and Eleventh avenue in the city of Denver. In 1887 the city passed an ordinance establishing the grade of the avenue and street in question, making the grade line about eight feet below the natural surface of the lots. The streets were reduced to that grade, and, with reference to the level of the street thus reduced, plaintiff built upon her lots a dwelling house and barn, planted trees, and, relying upon the fact, and so believing, that the grade of the streets as established was permanent, for the purpose

of retaining the earth of the lots built at the line of
the lots and fronting on the highways a retaining wall
of stone eight feet in height at one place and about
five feet elsewhere.

In 1897, by an ordinance duly passed, the city
changed the grade of these highways where plaintiff's
premises abut thereon, the effect of which was, when
the streets were made to conform thereto, that the sur-
face of the highways was lowered to the depth of
about three feet at the corner of plaintiff's premises,
and at other places in front of the same to the depth of
about two feet below the grade as established by the
previous ordinance. The result of the change is said
to make ingress to and egress from the premises more
difficult than theretofore, to require expense to be in-
curred in enlarging and replacing the retaining wall,
and to diminish the value of the premises. The re-
sult of the trial before a jury was in plaintiff's favor
in the sum of $1700, upon which was entered the
judgment from which the city has appealed.

Mr. H. M. ORAHOOD and Mr. H. L. RITTER, for
appellant.

Mr. E. T. WELLS, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion
of the court.

None of the questions discussed are worthy of
consideration except the liability of the city for a
change of grade. The objections that witnesses were
permitted to give their opinion as to the amount, and
to the instructions of the court on the measure of
damages are not serious; though the form of some of
the questions may be technically improper. The
court substantially submitted the case to the jury, and
permitted evidence to be introduced, upon the theory

that the measure of damages was the diminution, if any, of the actual market value of the premises occasioned by the change of grade. That is to say, the damage, if any, was the difference between the market value of the premises before and after the streets were leveled in accordance with the change of grade. This was correct.

The important and vital question is whether any liability of the city has been shown. It is the contention of plaintiff that under sec. 15, art. II. of the constitution declaring "that private property shall not be taken or damaged, for public or private use, without just compensation," her property has in the constitutional sense been damaged. The position of defendant is that since the power to grade and improve streets is vested in the city and is a continuing power, of the necessity for, and expediency of, the exercise of which the city alone is the judge, unless by constitution or statute compensation is expressly awarded for changes resulting from such public improvements there can be no recovery. The claim is also made that under previous decisions of this court a reasonable change or improvement in a street, such as this is, though it may result in consequential damage to the abutting owner, entails no liability therefor upon the municipality. That it is only for an unreasonable use, or capricious change of grade, or for the negligent or unskilful manner in which the work of changing the grade is accomplished that the city in any event may be charged. The decisions referred to, which we will have occasion to mention later, are: *City of Denver v. Bayer*, 7 Colo., 113; *City of Denver v. Vernia*, 8 Colo., 399; *Denver Circle R. R. Co. v. Nestor*, 10 Colo., 403; *City of Denver v. Rhodes*, 9 Colo., 554; *Aicher v. City of Denver*, 10 Colo. App., 413; *D. & S. F. R. Co. et al. v. Domke*,

*et al.*, 11 Colo., 247; *Gilbert v. Greeley S. L. & P. Ry. Co.*, 13 Colo., 501; *Pueblo v. Strait*, 20 Colo., 13, 19.

All the authorities say that at common law, and in the absence of statutory or constitutional authority, a municipality in a case like the one at bar is not liable. 2 Dillon on Municipal Corporations, 4th ed., §§ 686, and 989-995.

In 1870 there was inserted in the constitution of the state of Illinois a section that "private property shall not be taken or damaged for public use without just compensation." In *Rigney v. City of Chicago*, 102 Ill., 64, by a divided court, it was held under this clause that an abutting owner might recover in cases where "there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of constitutional or statutory provisions, give a right of action." And in applying that principle the city was held liable for constructing a viaduct upon a public street near its intersection with another street, thereby cutting off access to the plaintiff's house and lot from and along the street intersected. Since that time the states of Alabama, Arkansas, Californa, Colorado, Georgia, Kentucky, Mississippi, Missouri, Montana, Nebraska, Texas, Washington, and possibly others have adopted similar provisions, and the courts of last resort thereof have followed the construction given by the supreme court of Illinois in the Rigney case, as will be seen by the following, among other cases that might be cited: *Harmon v. City of Omaha*, 17 Nebr., 548; *Hammond v. Harvard*, 31 Nebr., 635; *Worth v. City of Springfield*, 78 Mo., 107, 110; *Gibson v. Owens*, 115 Mo., 258; *Mayor of Vicksburg v. Herman*, 72 Miss., 211; *City of Ft. Worth v. Howard*, 3 Tex. Civ. App., 537; *Reardon et al. v. City and*

*County of San Francisco,* 66 Cala., 492, 504-5-6; *Eachus v. Los Angeles Co.,* 103 Cala., 614; *Brown v. City of Seattle et al.,* 5 Washington, 35; *O'Brien v. City of Philadelphia,* 150 Pa. St., 589.

For a collection of other cases see Dillon on Municipal Corporations, 4th ed., §§ 989-995; Lewis on Eminent Domain, § 223.

It would serve no useful purpose to review in detail all of these decisions. Some of them hold that a city is liable in damages to the abutting owner of land on a street the grade of which has been reduced from the natural surface, whether it be the one first established or for a change of a previously established grade. Others seem to restrict liability to cases where there has been a change of a previous grade, and to exempt from the operation of the constitutional provision the first reduction of grade from the natural surface.

It would seem under all the authorities, at least aside from those of our own state, a fair construction of this constitutional provision that for damages such as plaintiff has suffered the city is liable. Judge Dillon's summary of the doctrine is this:

"Although sensible of the apparent difficulty of defining the grounds for the distinction, it seems to us, where a grade line has been officially established and where property has been improved on the faith of it (which is, of course, done on the assumption that the grade is permanent, although the power to change it for the public good exists), that such a case rests upon so strong a basis of natural justice as to bring it within the purpose of the constitutional provision in question, which was to prevent the unequal sacrifice for the public good which in such cases the abutting owner was, by the established course of decisions, required to make." He would make the municipality liable for consequential damages in that class of cases,

but not "for reducing the natural surface of the street in the course of its normal and ordinary improvement for street purposes proper to a grade line for the first time established." 2 Dillon on Municipal Corporations (4th ed.) § 995 b.

The only embarrassment under which we labor is that there are found in the opinions of this court in the cases above cited statements which, though not strictly germane to the points decided, give color to the contention of defendant that a municipality is not liable to an abutting owner for an ordinary use of, or reasonable change of grade in, the adjacent street. In the Bayer case, in a well-reasoned opinion by Mr. Justice Helm, the only proposition decided was that the use of a street by a steam railroad was not such a use as was contemplated by the lot owner when he purchased, or by the dedicator when he made his dedication, and therefore that such an incumbrance on the street gave him a cause of action. In illustrating the general subject the learned judge proceeded to say, however, that there were interferences and resulting injury to property of an abutter, even in this state, which were held to *damnum absque injuria,* where they were occasioned by a reasonable improvement of the street by the proper authorities for the greater convenience of the public, and the learned judge then said: "In determining what changes and improvements are most conducive to this end, the council exercises a large discretion. And unless unreasonable changes are made, or injury results to the adjoining premises through the unskilfulness or negligence of those employed, the owner thereof will not be heard to complain, though, in fact the real value and convenience of his property are diminished thereby."

The reason therefor was thus stated: "The abutting owner may well be presumed to have taken into consideration the fact that the grade of the street

might be raised or lowered, that pavements might be laid and bridges and culverts constructed, and that a street railroad even might be built and operated thereon; and it may fairly be presumed that in purchasing he anticipated and allowed for the possible or probable damages to result from these and similar changes, or that he signified his consent thereto, and thus deprived himself of any right to compensation therefor."

This language, it is to be observed, was not absolutely necessary to the decision of the particular point determined; but it was used to illustrate the different consequences between an ordinary and extraordinary use of streets by the municipality. The language was certainly appropriate as argument, even if not indispensably necessary to the decision. Possibly it was *dicta*; but while *dicta,* it is entitled to the consideration which sound reasoning merits. We also remark that no attempt was made to define a reasonable use or a reasonable grade or change thereof.

This language is referred to with approval in a number of the other cases cited, but it is this case upon which the city chiefly relies. If thereby the court means to say that a reasonable use, or the establishing of a reasonable grade of a street is one that entails no practical damage, or if the intention was to hold that for the first establishing of a grade the city was not liable for the consequential damage, if any, the doctrine is not opposed to the view announced by Judge Dillon. Indeed we think that every statement of this court upon this general subject, found in the reported decisions, can be harmonized with the conclusion of that learned author. But we do not understand that this court has ever declared that no recovery could be had by an abutting owner whose property was materially diminished in value as the result of a change of the grade of an adjacent street by low-

8

ering or elevating it from a previously established grade in accordance with which the owner had made valuable improvements. We the more readily reach this conclusion since Chief Justice Beck, in the Vernia case, after commenting upon the Bayer case says: "It is unnecessary to consider the question whether the establishing of such a grade, and carefully reducing the street thereto, would present such a case of injury to the abutting lot-owners who had purchased property on the street and erected improvements thereon before such grade was established, but with reference to an existing grade previously fixed by ordinance, and the street reduced thereto, for no such case was here made out."

This observation shows that the court then did not suppose that in this jurisdiction there existed, or at that time there was being enunciated, any such rule as the city in this case contends for. We think a careful examination of the other cases will show that no such principle has been laid down. In line with this conclusion our court of appeals, in the Aicher case, at page 418, speaking by Mr. Justice Bissell, said: "A case is not presented which calls on us to determine how far, if at all, the city would ever be liable for an alteration in its grades, nor how far it must respond for resulting injuries."

The question therefore we consider an open one in this state. While no attempt is made to lay down a rule applicable to all cases, the wiser course being to determine each one as it arises, we are of opinion that under the facts of this case, which are that plaintiff made improvements upon her lots upon the faith of, and with reference to, what she supposed was the permanent grade of the adjacent streets in accordance with the ordinance of 1887, and that the change of grade authorized and carried into effect under the ordinance of 1897, damaged her property in the con-

stitutional sense, since its market value was thereby materially impaired, the defendant should respond in damages.   If the Bayer case is applicable, then by reading it in the light of the test furnished by Judge Dillon, we might well hold that, under the doctrine there announced, the change of grade from a previously established one was, as matter of law, in the circumstances of this case, 'unreasonable for which recovery for the consequential damage may be had.

The judgment is therefore affirmed.

*Affirmed.*

Mr. JUSTICE STEELE not participating.