YETTER WELL SERVICE, INC.,
a Colorado corporation,
Plaintiff–Appellee,

v.

CIMARRON OIL COMPANY, INC., a California corporation; Tandem Oil Company, Inc., a California corporation; and Cimarron/Jubilee II Limited Partnership, Defendants–Appellants.

No. 91CA1414.

Colorado Court of Appeals,
Div. II.

Oct. 22, 1992.

William E. Condon, Jr., Greeley, for plaintiff-appellee.

Rebstock & Kelley, P.C., Thomas E. Kelley, Denver, for defendants-appellants.

Opinion by Judge REED.

Defendants, Cimarron Oil Company, Inc. (COC), Tandem Oil Company, Inc. (Tandem), and Cimarron/Jubilee II Limited Partnership, appeal the judgment of the trial court entered in favor of plaintiff, Yetter Well Service, Inc. We affirm.

Plaintiff is an unpaid judgment creditor of COC. Its underlying claim arose out of its rendition to COC of oil field services for which it was owed an unpaid balance since

August 1988. As a result, it commenced an action against COC in the district court of Weld County in January 1989, where it was awarded a judgment, by stipulation, in September 1989.

COC is a California corporation. At all times pertinent to this litigation, Dome and Berlind were its majority stockholders and were also its directors and executive officers.

COC was engaged in the business of acquiring and developing oil and gas leases. As part of its operations, it formed partnerships in which it sold limited partnership interests. In each partnership, COC remained a general partner and was entitled to share in any profits of the partnership endeavor.

In the fall of 1988, disagreement arose between Dome and Berlind. As a result, COC became and has remained dormant since October 1988. Dome and Berlind each formed his own separate corporation, and the trial court found, with record support, that each began his separate acquisition of partnership interests owned by COC. Only those acquired by Berlind's corporation, Tandem, are involved in this controversy.

In April 1989, COC's interest in property known as the Rake field was assigned to Tandem. On November 10, 1989, this property interest was assigned by Tandem to the Tandem/Rake partnership, in which Tandem, instead of COC, was the general partner. Thereafter, Tandem formed a new partnership known as Tandem/Flapjack, for further development of the Rake field.

Similarly, in March 1989, COC's interest in the property known as the Brittany field was assigned to Tandem, and on May 30, 1989, Tandem assigned the interest to the Tandem/Jamboree partnership. Again, Tandem, instead of COC, succeeded to the general partnership interest.

When plaintiff became aware of these transfers, and its judgment being unsatisfied, it initiated the present action to set aside the conveyances (along with another transaction which is not pertinent to this appeal). However, plaintiff did not join, as parties, either the partnerships or the limited partners therein.

After a bench trial, the trial court found that the transfers of the properties' interests from COC to Tandem were done with the intent to delay and hinder the plaintiff in violation of § 38–10–117, C.R.S. (1992 Cum.Supp.). However, because outstanding interests in the properties were owned by the partnerships and by the limited partners, who were not parties to the suit, it refused to set aside the conveyances.

In lieu of so doing, it declared a constructive trust in favor of plaintiff upon the general partnership interests owned by Tandem in the Tandem/Rake partnership, the Tandem/Flapjack partnership, and the Tandem/Jamboree partnership, and designated Tandem the constructive trustee. Further, it imposed upon Tandem a charging order, requiring that any payments received by it as the general partner in these three entities be paid to plaintiff toward satisfaction of its judgment pursuant to § 7–62–703, C.R.S. (1986 Repl.Vol. 3A).

## I.

Defendants contend that the trial court erred in finding that the transfers in question violated § 38–10–117, C.R.S. (1992 Cum.Supp.). Specifically, defendants argue that there was insufficient evidence upon which the trial court could find that the transfers were done with the requisite intent to "hinder or delay" plaintiff as a judgment creditor. We disagree.

Section 38–10–117 states that every conveyance or assignment of any estate or interest in lands, goods, or things in action, or of any rents and profits derived therefrom, made with the intent to hinder, delay, or defraud creditors, is void as against the persons so hindered, delayed, or defrauded. Pursuant to § 38–10–120, C.R.S. (1982 Repl.Vol. 16A), the issue of intent in such a conveyance is one of fact.

■ No conveyance may be adjudged "fraudulent" against creditors without proof that: (1) the transferor was insolvent at the time of the transfer, or was rendered

insolvent thereby; (2) the purpose of the conveyance was to defeat, hinder, or delay creditors; (3) the transferor acted with fraudulent intent or with an intent to benefit or to secure an advantage to himself; and (4) the transferee knew of, or participated in, the transferor's intent. *See Fish v. East,* 114 F.2d 177 (10th Cir.1940); *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101 (1908); *Homestead Mining Co. v. Reynolds,* 30 Colo. 330, 70 P. 422 (1902); *Burr v. Clement,* 9 Colo. 1, 9 P. 633 (1886).

■ By listing the elements of hindrance, delay, or fraud in the disjunctive, the statute implies that each is to have substantive consequences and a creditor need only show that the debtor acted with one of the three elements in mind to support a remedy. *See Italian–American Bank v. Lepore,* 79 Colo. 466, 246 P. 792 (1926); *Mohler v. Buena Vista Bank & Trust Co.,* 42 Colo.App. 4, 588 P.2d 894 (1978). In other words, if there is a showing of intent to hinder or delay, a showing of intent to defraud is not necessary. Further, the fact that consideration is given for the transfer constitutes no defense if the transferee has previous notice of the transferor's intent. Section 38–10–121, C.R.S. (1982 Repl.Vol. 16A).

Only rarely will a creditor be able to produce direct proof of a debtor's intent, and generally, the creditor will have to rely on proof of circumstances which, in their entirety, show that the debtor harbored the proscribed intent. The trier of fact may then draw the appropriate inference from the pattern of facts and circumstances presented.

■ Here, as found by the trial court, there is circumstantial evidence, derived through the actions of defendant's agents, to support the court's conclusion that the transfers of property in question were accomplished with the intent of hindrance or delay.

The court concluded, with record support, that the owners of both COC and Tandem had knowledge that COC had ceased business activities in the fall of 1988 and was about to convey substantially all of its business assets to Tandem and to

Dome's corporation. Further, COC's owners (who were also its officers and directors) knew that it could not pay plaintiff's account from resources remaining after the transfer; and, most importantly, the owners planned to divert and acquire, through their own newly formed corporations, the assets of COC. The owners failed to disclose their plan in their discussions with the plaintiff, thus misleading plaintiff and deflecting any inquiry or special collection effort by it.

The trial court also found that, because one of the owners of COC had considerable experience in the oil and gas business, COC and Tandem knew the natural and obvious consequences of the transactions, namely, to render COC incapable of paying its debts. This was borne out by the testimony which showed that, after the transactions, COC had no capital except unaccrued rental or payments due from Tandem. As one of the former owners of COC candidly admitted, as a result of COC being split up and the new companies formed.

Based on the foregoing, a reasonable inference was that defendants' conduct manifested the type of intent which imposes liability under the fraudulent conveyance statute. The clear dictate of the law is thus that the trial court's judgment must be upheld. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Defendants also contend that the trial court acted beyond the scope of its authority by imposing a constructive trust as a remedy. We disagree.

■ A constructive trust is an extremely flexible remedy, appropriate in circumstances involving fraud or duress, or when a confidential relationship exists, and also to prevent unjust enrichment. *Mancuso v. United Bank,* 818 P.2d 732 (Colo.1991). It is also appropriate if innocent third persons have subsequently acquired an interest in the property. *See Mt. Sneffels Co. v. Estate of Scott,* 789 P.2d 464 (Colo.App.1989).

Such circumstances exist here. As found by the trial court, Tandem has succeeded to property interests which rightfully belonged to COC, as a result of transactions intended to delay and hinder the latter's creditors. Additionally, rights of partnerships and limited partners in the properties have intervened over which the court has no jurisdiction because they have not been joined as parties to the litigation. *See Inman v. White*, 21 Colo.App. 427, 122 P. 65 (1912); § 13–50–105, C.R.S. (1987 Repl.Vol. 6A).

Accordingly, the trial court was required to fashion a remedy that recognized the rights of plaintiff, as COC's creditor, but which also protected the rights of the partnership interests. This it did properly by decreeing that Tandem held its interests as a general partner in the properties only as a constructive trustee. *See Mancuso v. United Bank, supra.*

To implement this declaration, and for the plaintiff's benefit, the court then issued a charging order pursuant to § 7–62–703, C.R.S. (1986 Repl.Vol. 3A) which provides:

> On application ... by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment....

We conclude that, because of the decree, Tandem held its interests as a constructive trustee, and therefore, its status was the same as that occupied by COC prior to the illegal transfers. Thus, to that extent, plaintiff became a judgment creditor of Tandem entitled to the benefits of § 7–62–703. *See In re Marriage of Paul*, 821 P.2d 925 (Colo.App.1991).

Judgment affirmed.

PIERCE and RULAND, JJ., concur.