Billie **SYFRETT**, Plaintiff–Appellee,

v.

Daniel E. **PULLEN**, Defendant–Appellant.

No. 08CA0243.

Colorado Court of Appeals, Div. I.

Dec. 24, 2008.

Certiorari Denied June 8, 2009.

Beck, Johnson & Nolan, P.C., Thomas A. Nolan, Golden, Colorado, for Plaintiff–Appellee.

Riggs, Abney, Neal, Turpen, Orbison & Lewis, Steven Janiszewski, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Defendant, Daniel E. Pullen, appeals from a judgment entered against him, individually, in favor of plaintiff, Billie Syfrett, on her claim under the Mechanic's Lien Trust Fund Statute (Trust Fund Statute), § 38–22–127, C.R.S.2008. We affirm the result, but remand for modification of the form of judgment.

## I.  Background

Syfrett entered into a construction contract with Artistic Expressions, Inc. (Artistic) to remodel her family's residence.  A dispute over Artistic's performance arose during the job.  Although Syfrett had paid in excess of $118,000 to Artistic under the contract, the job was not complete when Artistic terminated its work. Syfrett had the job completed by others at a cost higher than the contract price.

Syfrett sued Artistic for breach of the construction contract.  She alleged a second claim against Pullen, individually as Artistic's owner, for breach of fiduciary duty under, and noncompliance with, subsection 1 of the Trust Fund Statute asserting that subcontractors, laborers, and material suppliers had not been paid from the funds she had paid to Artistic under the contract.  As a result, those subcontractors, laborers, and material suppliers were demanding payment directly from Syfrett or threatening to file liens against her home.  She further alleged that the violation of the Trust Fund Statute constituted civil theft by Pullen under section 18–4–401, C.R.S.2008, as provided in section 38–22–127(5), C.R.S.2008.

After a bench trial, the court entered judgment against Artistic on the breach of contract claim, awarding $85,799 in damages, representing the cost of completion.  The court also entered judgment in the amount of $53,591.40 against Pullen for violation of the Trust Fund Statute.  In calculating the damages awarded against Pullen, the trial court found that of the $118,000 paid by Syfrett, Artistic had taken $52,000 as "profit," and had left unpaid claims of subcontractors, laborers, and material suppliers totaling at least $17,863.80 as of the date of trial.  The court trebled the amount of damages representing the unpaid claims for the Trust Fund Statute violation, pursuant to section 18–4–405, C.R.S.2008, and awarded Syfrett a total of $53,591.40 against Pullen individually.

Pullen appeals only the judgment against him individually under the Trust Fund Statute, arguing that Syfrett lacks standing to sue under the statute for monies Artistic failed to pay to subcontractors, laborers, and material suppliers on the job.  He does not dispute that if he violated the statute he also committed civil theft.

## II.  Standard of Review

■ Because standing is necessary to invoke jurisdiction, we review the trial court's determination de novo.  *Rocky Mountain Animal Def. v. Colo. Div. of Wildlife,* 100 P.3d 508, 513 (Colo.App.2004).  Statutory interpretation is a question of law subject to de novo review.  *Flood v. Mercantile Adjustment Bureau, LLC,* 176 P.3d 769, 772 (Colo. 2008).

## III.  Standing

■ To establish standing, a plaintiff must demonstrate (1) an injury in fact (2) to a legally protected right.  *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).  On appeal, Pullen argues Syfrett lacks both components of standing.  First, he argues that under the circumstances here, she suffered no "injury in fact" because she has not shown that she paid any of the subcontractors, laborers, or material suppliers.  Second, he argues that as an owner of the construction project, Syfrett does not have a legally protected interest under the statute.  We reject these arguments.

### A.  Injury in Fact

■ Pullen contends that Syfrett has not demonstrated an injury in fact that would entitle her to standing under the statute, and that her injury, if any, is speculative, because she admitted she had not paid Artistic's subcontractors and material suppliers, and faced only the possibility of being pursued for payment.

Injury in fact may be demonstrated by showing that the action complained of has caused or has threatened to cause injury.  *Am. Comp. Ins. Co. v. McBride,* 107 P.3d 973, 976 (Colo.App.2004) (citing *Romer v. Colo. Gen. Assembly,* 810 P.2d 215, 218 (Colo. 1991)).  Whether a party has standing is determined as of the time the action is filed. *Id.* Standing is evaluated not on the pleadings alone but on the basis of all the evidence in the record.  *Dunlap v. Colorado Springs*

*Cablevision, Inc.,* 829 P.2d 1286, 1291 n. 7 (Colo.1992).

Here, Syfrett presented uncontroverted testimony that at the time she filed her complaint at least one material supplier had an existing mechanic's lien on her house and that several subcontractors and material suppliers remained unpaid. Thus, the trial court's conclusion that Syfrett had sustained an injury in fact and was exposed to further threatened injury is supported by the record and sufficient to satisfy that prong of the standing requirements.

### B. Legally Protected Interest

Section 38–22–127(1) of the Trust Fund Statute provides:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

■ While the statute expressly provides that a contractor must hold in trust all funds disbursed to it for the benefit of subcontractors, laborers, and material suppliers, the statute does not expressly specify who is authorized to enforce the statutory trust, nor the mechanism by which it is to be enforced.

Pullen contends that Syfrett's injury, if any, was not to a legally protected right, because the Trust Fund Statute only provides relief to unpaid subcontractors, laborers, and material suppliers. The trial court disagreed, relying upon *In re Regan,* 151 P.3d 1281 (Colo.2007), to find that "as beneficiaries, property owners are able to enforce the Trust Fund Statute against the contractor separate from the lien claim laws." On appeal, Pullen argues that the court's reliance on *Regan* is misplaced and the court's ruling erroneously allows homeowners the right to sue when such right under the statute should only be given to subcontractors, laborers, and material suppliers. We disagree.

We note initially that *Regan* cites favorably to several federal court decisions in bankruptcy cases, which held that owners of construction projects have standing under the Trust Fund Statute to object to a contractor's bankruptcy discharge in situations where the contractor has defalcated funds paid to it for the benefit of subcontractors. *See In re Specialized Installers, Inc.,* 12 B.R. 546, 551 (Bankr.D.Colo.1981) ("It is of no moment that the property owner seeks to enforce the trust rather than a subcontractor. The property owner clearly faces potential double payment . . . . Thus, it is the property owner who is the principal beneficiary of the statutory trust." (citations omitted)); *In re Walker,* 325 B.R. 598, 602–04 (D.Colo.2005) ("[W]hile the funds are to be held for payment to the specified categories of persons, the beneficiaries of such payments are a broader group of persons than just the payees themselves, and . . . the beneficiaries may include the owner of the project and the general contractor.").

*Walker* cites Colorado cases which assume or imply, but do not expressly hold, that a property owner has the right to enforce the trust created by the Trust Fund Statute. *See Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo.App.1988) (general contractor liable to project owner for diverting funds paid to general contractor); *Flooring Design Associates, Inc. v. Novick,* 923 P.2d 216, 219 (Colo. App.1995) (purpose of the statute is "to protect homeowners, laborers, and providers of construction materials from dishonest or profligate contractors"); *People v. Collie,* 682 P.2d 1208, 1210 (Colo.App.1983) (describing purpose of statute as protecting homeowners from dishonest or profligate contractors in criminal theft context); *see also First Commercial Corp. v. First Nat'l Bancorporation, Inc.,* 572 F.Supp. 1430, 1434 (D.Colo.1983) ("Both property owners and material suppliers may enforce the statutory trust. Since a property owner faces potential double payment, it is a direct beneficiary of the trust." (citations omitted)).

While the Colorado Supreme Court has not directly held that an owner has standing to sue under the Trust Fund Statute, we are guided by its discussion in *Regan*, 151 P.3d at 1286. In reaching its conclusion that a perfected lien, or the ability to file a lien, is not required to seek monies held in trust under section 38–22–127(1), the *Regan* court acknowledged that trust fund claims "can be made by two groups: subcontractors, laborers, or material suppliers who either (1) have a lien or may have a lien against property or (2) claim or may [file a] claim against a principal or surety." 151 P.3d at 1286. The *Regan* court further recognized:

Trust fund claims are separate from lien claims in part because of the different rights that property owners have under each procedure. A property owner cannot file a lien claim against his or her own property. *However, property owners are direct beneficiaries of the Trust Fund Statute to prevent the possibility of having to make double payments. In re Walker*, 325 B.R. 598, 602 (D.Colo.2005). When an owner pays a contractor and then a subcontractor places a lien on the owner's property, the owner is faced with the possibility of having to also pay the subcontractor to clear the lien cloud from the property. *Id.*

In contrast, the Trust Fund Statute assures property owners that they will not have to pay a second time to satisfy the subcontractor. In fact, the primary concern of the legislature, at the time the Trust Fund Statute was passed, was the protection of *property owners* against unscrupulous contractors. Transcript of Audio Tape: Hearing on H.B. 1510 Before the H. Bus. Affairs Comm., 1975 Leg., 50th Gen. Assem., 1st Reg. Sess. (Colo. Apr. 910, 1975) (on file with Colorado State Archives). *As beneficiaries, property owners are able to enforce the Trust Fund Statute against a contractor separate from the lien claim laws. Id.; see People v. Collie*, 682 P.2d 1208, 1210 (Colo.App.1983) (noting that the purpose of the Trust Fund Statute "is to protect *homeowners*, laborers, and materialmen from dishonest or profligate contractors") (emphasis added); *First Commercial Corp.*, 572 F.Supp. at 1434

(noting that the statute creates a separate form of protection because any other interpretation would render either lien claims or trust fund claims superfluous).

*Id.* (emphasis added) (additional citation omitted). Pullen argues that the trial court's reliance upon the above language is erroneous because the statements are "obiter dicta" to the issue presented in *Regan*.

The court in *Regan* was called upon to answer a question certified by the Tenth Circuit and interpret the application of the Trust Fund Statute. While we recognize that the above quoted language may not have been necessary to answer the question posed, we are not inclined to disregard unequivocal language of the supreme court which indicates how that court would rule on the question before us. Moreover, even dicta "is entitled to the consideration which sound reasoning merits." *City of Denver v. Bonesteel*, 30 Colo. 107, 113, 69 P. 595, 597 (1902).

Thus, we agree that the statements in *Regan* convey the supreme court's general interpretation of the scope of the statute. Indeed, *Regan* concludes its discussion of the Trust Fund Statute by stating: "Although the Trust Fund Statute could be read narrowly, as the district court did, such a reading cannot be reconciled with the General Assembly's intent to protect subcontractors, laborers, material suppliers, and homeowners from unscrupulous contractors." 151 P.3d at 1287. In addition, by citing *Walker* with approval, and the Colorado cases cited therein which recognize standing in the owner of a project, *Regan* implicitly accepts the results of those cases.

■ Accordingly, we conclude that the property owner of a construction project, as well as the subcontractors, material suppliers, and laborers, has a legally protected interest to enforce the trust created by the Trust Fund Statute upon funds disbursed by the owner to a general contractor so as to obtain the protection described in *Regan*. This does not necessarily mean, however, that the property owner has the right to retain the damages awarded against the general contractor, as discussed below.

### C. Constructive Trust

We also reject Pullen's contention that Syfrett's payment of the subcontractors is a condition precedent to her Trust Fund Statute claim, and that reversal is required because he will otherwise be exposed to double payments—once to plaintiff and once to the unpaid subcontractors.

Under the circumstances of this case, and consistent with the purpose of the Trust Fund Statute, Syfrett is entitled to a judgment imposing a constructive trust on the funds that Pullen received and should have paid to the subcontractors, material suppliers, and laborers, in the amount of $17,863.80. Under such judgment, Syfrett becomes the constructive trustee of any funds she collects from Pullen, and must hold the funds for the benefit of the subcontractors, laborers, and material suppliers who are unpaid and have claims to those funds.

The mechanic's lien laws, including the Trust Fund Statute, are construed according to equitable principles. *See Regan*, 151 P.3d at 1285. The imposition of a constructive trust on these funds is supported by equitable principles, and is consistent with the cases cited above, which recognize that the right given to the owner under the Trust Fund Statute is to enforce the statutory trust. *In re Specialized Installers, Inc.*, 12 B.R. at 551; *First Commercial Corp. v. First Nat'l Bancorporation, Inc.*, 572 F.Supp. at 1434. A constructive trust is an extremely flexible remedy, appropriate in circumstances to prevent unjust enrichment, particularly where innocent third persons, such as the subcontractors, laborers, and material suppliers here, have an interest in the property subject to the trust. *See Yetter Well Service, Inc. v. Cimarron Oil Co.*, 841 P.2d 1068, 1070 (Colo.App.1992).

This result is consistent with the purpose of the Trust Fund Statute—to impose a trust on funds disbursed to a contractor. Imposition of a constructive trust protects the beneficiaries of the statute identified in *Regan;* it avoids the contractor's concern of exposure to double liability; and it is consistent with the goal of avoiding unjust enrichment of the owner. *See Regan*, 151 P.3d at 1288 n. 7.

### D. Treble Damages

Pullen does not separately challenge the trial court's decision to treble the damages award. *See* § 18–4–405. Nonetheless, we hold that the constructive trust must be imposed on the trebled award as well.

Since the Trust Fund Statute provides that the funds disbursed to Pullen were to be held in trust for payment to the subcontractors, laborers, and material suppliers, they are the owners of the funds. It is the subcontractors, laborers, and material suppliers who have been deprived of the funds. Therefore, in order for Syfrett to recover trebled damages in accordance with the theft statutes, the trebled amounts awarded against Pullen must also be held in constructive trust for the benefit of unpaid subcontractors, laborers, and material suppliers.

The judgment for Syfrett on her claim under the Trust Fund Statute is affirmed, but the case is remanded for modification of the judgment to reflect that the damages are held in constructive trust by Syfrett for the benefit of unpaid subcontractors, laborers, and material suppliers who have claims to the funds. To the extent that the subcontractors, laborers and material suppliers have not submitted properly documented claims to the plaintiff within a reasonable time of having been notified of money collected on the judgment, the plaintiff may apply to the trial court for a release of the money from the constructive trust created by this opinion.

Judge LICHTENSTEIN and Judge PLANK * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.