**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1729

_____

IN RE: URSA OPERATING COMPANY, LLC,
Debtor

AIRPORT LAND PARTNERS, LTD; JOHN ANDERSON; FERNANDO JOSE
ARROYO; BAR SEVEN L, LLC; ALLEN BYERLEY; RICHARD N. CASEY; ALICE
COLTON; DON COLTON; GREGG COLTON; DANIELS PETROLEUM COMPANY
AND BARRETT BAKER AS PRESIDENT; VERNON P. DEDISSE, JR.; MARY
RUTH DEDISSE, DIVIDE CREEK ENTERPRISES, LLC; ENERGY INVESTMENTS,
INC., HUNTER FAMILY LIMITED PARTNERSHIP; JERRY D. JONES,
INDIVIDUALLY AS TRUSTEE OF THE PAULA JONES SPECIAL NEEDS TRUST;
CHRISTINE JONES; JUHAN LP; JUHAN-RAY, LLC; JUHAN FORDHAM
MINERALS, LLC; PETER LANGEGGER; LARAMIDE GEOSCIENCES, LLC;
THOMAS D. LAWSON; FRED LIMBACH; PAUL LIMBACH; NANCI LIMBACH;
STACIE ANDERSON MALONE; MAP2003-NET, AN OKLAHOMA GENERAL
PARTNERSHIP; MAP2004-OK. AN OKLAHOMA GENERAL PARTNERSHIP,
MAP99A-NET, A TEXAS GENERAL PARTNERSHIP; KRISTINE M. PETERSON;
MICHAEL PINNELL; PIONEER OIL AND GAS; KELLEY ANDERSON RINEHART;
ROY ROYALTY, INC.; JASON ALAN SCOTT; JOSEPH EDWARD SCOTT;
REBECCA P. SCOTT; SHARON SALGADO; SHIDELER ENERGY COMPANY,
LLC; SHIDELEROSA, LLP; PATRICK L. SHUSTER; TONI M. SHUSTER; THE
CITY OF RIFLE, COLORADO; TITAN ENERGY RESOURCES CORPORATION;
WATSON RANCHES, LTD; BRETT JAMES WATSON; DIANA K. WATSON;
JAMES L. WATSON; LEE WATSON AND EVADEAN WATSON, AS CO-
TRUSTEES OF THE WATSON FAMILY REVOCABLE TRUST, AND VELMA
WEINREIS (COLLECTIVELY, THE "ROYAL CLAIMANTS"),

Appellants

_____

On Appeal from the United States District Court for the
District of Delaware
(D.C. No. 1-21-cv-00495)

District Judge: Hon. Maryellen Noreika

_____

Argued on June 15, 2023

_____

Before: PORTER, FREEMAN, and FISHER
*Circuit Judges*.

(Filed: December 1, 2023)


_____

OPINION[*]

_____

Duston K. McFaul
Maegan Quejada
Sidley Austin LLP
1000 Louisiana Street
Suite 5900
Houston, TX 77002

Robert S. Velevis **[ARGUED]**
Sidley Austin LLP
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201

Robert S. Brady
Edmon L. Morton
Kenneth J. Enos
Joseph M. Mulvihill
Young Conaway Stargatt & Taylor LLP
Rodney Square
1000 N King Street
Wilmington, Delaware 19801

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

2

*Counsel for Appellee Ursa Operating Company LLC*

Ana Alfonso **[ARGUED]**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

John H. Knight
Amanda R. Steele
Richards Layton & Finger
One Rodney Square
920 N King Street
Wilmington, DE 19801

*Counsel for Appellee Wells Fargo Bank NA*

George A. Barton **[ARGUED]**
Barton and Burrows LLC
5201 Johnson Drive
Suite 110
Mission, KS 66205

*Counsel for Appellants*

PORTER, *Circuit Judge*.

This case arises from the bankruptcy of Ursa Operating Company, LLC and its affiliates (collectively "Ursa"), an extractor and seller of oil and gas in the western United States. Ursa operated wells on leased property owned by the Plaintiff-Appellants ("the Royalty Claimants"). The Royalty Claimants allege that Ursa wrongfully retained mineral royalties due under the leases. They contend those funds are their property and therefore not part of Ursa's bankruptcy estate.

The Royalty Claimants are correct that under Colorado law they have a real property interest in unpaid royalties. And Colorado's constructive trust doctrine supports

imposition of a constructive trust if a factfinder concludes that Ursa was unjustly enriched at the Royalty Claimants' expense. Accordingly, we will vacate the order of the District Court and require remand to the Bankruptcy Court for further proceedings.

I

The Royalty Claimants contend that for eight years, Ursa withheld royalties from natural gas sales due to them under the leases. "[N]atural gas purchasers remitted the entire payment for [gas] purchases to Ursa, which was then responsible to pay the Royalty Claimants their percentage share of the natural gas sale proceeds." Appellant Br. 4. From there, two types of Royalty Claimants emerge. The first consists of Claimants who expressly contracted for payments to be made to them "without deductions" of "various post-production costs." Appellant Br. 7 & n.3. They contend that Ursa deducted costs in violation of their agreements, accumulating undisbursed royalties in excess of $24 million. The second category of Claimants negotiated "silent" leases that did not address the question of payments being pre- or post-deduction. They argue that Ursa violated Colorado law by failing to pay royalties based on the sale price of natural gas at the location of the first commercial market.

Both types of Royalty Claimants assert a real property interest in the royalties generated by the leased properties and argue that a constructive trust must be established to hold those proceeds before Ursa's estate can be presented to the Bankruptcy Court for resolution. The Bankruptcy Court and District Court concluded that each of the Royalty Claimants' underpayment claims should be classified as unsecured non-priority claims because the underpaid royalties retained by Ursa are property of its estate.

4

II

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). The District Court had jurisdiction to review the Royalty Claimants' appeal under 28 U.S.C. § 158(a), and we have jurisdiction to review that final decision under 28 U.S.C. § 158(d)(1).

"When the District Court sits as an appellate court for the Bankruptcy Court, 'our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determination.'" *In re Energy Future Holdings Corp.*, 990 F.3d 728, 736 (3d Cir. 2021) (quoting *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)). We review the Bankruptcy Court's conclusions of law de novo. *Id.*

III

Whether any funds currently in Ursa's possession are traceable to those claimed by the Royalty Claimants is a factual issue that has not yet been resolved below and cannot be resolved here. The questions presented are whether any withheld royalties are the Royalty Claimants' property and, if so, whether the equitable remedy of a constructive trust is available. The analysis of these questions is the same for both sets of Claimants.

A

The Royalty Claimants argue that under Colorado law, the royalties due to them never became part of Ursa's estate and, therefore, cannot be disbursed to Ursa's creditors according to the normal priority of claims. Their argument is premised upon two statutes.

5

The first is 11 U.S.C. § 541(d), which states, in relevant part, that

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The second is Colo. Rev. Stat. § 38-30-107.5, which provides that

> [a]ny conveyance, reservation, or devise of a royalty interest in minerals or geothermal resources, whether of a perpetual or limited duration, contained in any instrument executed on or after July 1, 1991, creates a real property interest which vests in the holder or holders of such interest the right to receive the designated royalty share of the specified minerals or geothermal resources or the proceeds therefrom in accordance with the terms of the instrument.[1]

Reading the two together: If a debtor holds only legal title to but not an equitable interest in property, that property will not become part of the debtor's bankruptcy estate, 11 U.S.C. § 541(d); and under Colorado law, a reservation of a royalty interest in minerals or geothermal resources creates a real property interest in the designated share of royalties, Colo. Rev. Stat. § 38-30-107.5. Therefore, when Ursa leased lands to extract and sell minerals or geothermal resources, it did not have an equitable interest in the

---

[1] The Royalty Claimants cite Colo. Rev. Stat. § 38-30-107.5 for the first time on appeal before this Court. Ursa contends that because Appellants are "claiming for the first time that they have a statutorily granted property interest," they are "shifting to a new argument" which has been waived. Appellees' Br. 27. But, as discussed below, this statute codified longstanding Colorado common law, and the Royalty Claimants argued below that they have a property interest in royalty proceeds under Colorado law. *See, e.g.*, App. 2512–19. Their argument is therefore preserved for appeal. *See United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013). And we will take judicial notice of the statute. *Gallup v. Caldwell*, 120 F.2d 90, 93 (3d Cir. 1941) (calling it "well established" that we may "take[] judicial notice of the laws of every state of the Union, because those laws are known to the court below as laws alone, needing no averment or proof") (quoting *Hanley v. Donoghue*, 116 U.S. 1, 6 (1885)).

6

Royalty Claimants' designated share of the proceeds that it received from the sale of those resources.

The Royalty Claimants are correct. They "reserv[ed] . . . a royalty interest in minerals or geothermal resources." *Id*. Those reservations were "contained in . . . instrument[s] executed on or after July 1, 1991." *Id.* Therefore, a "real property interest" in royalty proceeds from natural gas sales was vested in the Royalty Claimants by the leases entered with Ursa. *Id.* The language of the statute and the nature of the leases establish that interest.

As the Royalty Claimants note, the statute codifies longstanding Colorado common law on the nature of the interest retained by lessors of land for mineral and geothermal resource extraction. *Keller Cattle Co. v. Allison*, 55 P.3d 257, 263 (Colo. App. 2002).

Ursa argues that "Appellants' argument would create a new super priority in bankruptcy that would surpass even that of purchase money security interests, by allowing contract claims to completely circumvent the bankruptcy process by claiming to be owners of a debtor's operating cash." Appellee Br. 31. But this misconstrues the Royalty Claimants' position. They do not contend that any contract claim creates a property interest in a debtor's operating cash. Instead, they argue that the specific oil and gas leases at issue created a property interest in mineral proceeds under Colorado law. And excluding their property from Ursa's before the estate is parsed out is not a new invention in bankruptcy law; it is explicitly provided for in the code. 11 U.S.C. § 541(d).

7

The code contemplates that a debtor in bankruptcy may be holding property that equitably belongs to another and provides that such property should not be disbursed to creditors along with the debtor's own. That is the scenario here.

Colorado law gives the Royalty Claimants a property interest in royalties on the leases that they granted to Ursa. The remaining question is whether the remedy of constructive trust is available to them in defense of that interest.

B

On that issue, we face a preliminary choice-of-law question. The Royalty Claimants direct us to Colorado courts' rules for imposing a constructive trust. Ursa's arguments vary between reliance on state and federal authorities. We will apply Colorado law.

We generally look to state law to determine the existence of a trust relationship. *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) ("We are satisfied that in determining whether a trust has been created we look to the entire body of germane state law, including the relevant case law."). However, we have previously noted an exception to that rule when the issue before us "sufficiently implicates important federal interests to warrant the application of federal common law." *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1055 (3d Cir. 1993). In determining whether that exception is satisfied, we look to "(1) the need for a nationally uniform law; (2) whether incorporation of state law would frustrate specific objectives of the federal program at issue; and (3) the extent to which application of a federal common law rule would upset commercial expectations that state law would govern." *Id.* In *Columbia Gas*, we chose to apply

8

federal common law because the customer refunds at issue in that case were "created by an order of [the Federal Energy Regulatory Commission]"—and thus were extensively regulated by federal regulation—and implemented the central objective of the federal Natural Gas Act. *Id.* at 1055–56.

In this case, we see no reason to apply our exception rather than the rule. The underpaid royalties are not subject to any federal statutory provision or federal regulatory oversight; it is Colorado law that creates the real property right in this case. Colo. Rev. Stat. § 38-30-107.5. So, unlike in *Columbia Gas*, we are not faced with any uniformity concerns or uniquely federal program. And because we are applying longstanding, precedential state law and not fashioning a new and unforeseen federal common law rule, the parties' commercial expectations cannot be upset.

Applying Colorado law, we hold that a constructive trust is a legally available remedy in this case. Colorado law defines constructive trusts broadly: "A constructive trust is a remedial device designed to prevent unjust enrichment," and it is "imposed . . . because the person holding the title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737 (Colo. 1991) (citations and quoted source omitted). "Unjust enrichment occurs when[,] . . . at the plaintiff's expense, . . . the defendant received a benefit . . . under circumstances that would make it unjust for the defendant to retain the benefit without paying." *Lawry v. Palm*, 192 P.3d 550, 564 (Colo. App. 2008). "The doctrine of constructive trusts is extremely flexible" and is not limited to instances of "fraud, duress, or abuse of confidential or fiduciary relationships." *Mancuso*, 818 P.2d at

9

737–38 (specifying that those are only "some instances" where a constructive trust may be imposed).

A constructive trust remedy is available in this case if Ursa was unjustly enriched at the Royalty Claimants' expense.[2] As alleged by the Royalty Claimants, Ursa failed to pay the Royalty Claimants their percentage share of the natural gas proceeds, either by deducting costs in violation of their agreement or failing to pay royalties based on the sale price of natural gas at the location of the first commercial market. Ursa then retained those proceeds to its benefit. Because Ursa would be unjustly enriched if it were permitted to retain the benefit of the property that belongs to the Royalty Claimants, a constructive trust may be imposed.

Ursa's arguments to the contrary are unpersuasive. Ursa first contends that the Royalty Claimants' claim is for an alleged breach of contract under the leases and therefore, pursuant to *Lawry*, a constructive trust is unavailable. But *Lawry* in fact forecloses this very argument. The Colorado Court of Appeals in *Lawry* "disagree[d]" with the defendants' argument that it was "improper . . . to impose a constructive trust . . . under the theory of unjust enrichment because the parties had a written contract." 192 P.3d at 564. The court made clear that "[a] plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right under an enforceable contract, if justice requires." *Id*.; *see also, e.g.*, *Syfrett v. Pullen*, 209 P.3d

---

[2] The Bankruptcy Court reserved for a future hearing whether Ursa made any improper deductions and, if so, the amounts of those deductions as related to each Royalty Claimant. App. 2570–71. On remand, additional factfinding will be necessary to determine which if any Royalty Claimants may be entitled to a constructive trust remedy.

1167, 1172 (Colo. App. 2008) (imposing constructive trust for funds not otherwise recoverable under a written, enforceable contract). Because the Royalty Claimants have no such alternative rights following Ursa's discharge pursuant to the Chapter 11 Plan, imposition of a constructive trust is an available remedy for any unjust enrichment.

Ursa also argues that the Royalty Claimants cannot establish the elements of unjust enrichment because it did not keep the funds for its own benefit but instead distributed them to its secured lenders. But if Ursa did keep and retain the benefit of the Royalty Claimants' property for over eight years prior to filing for bankruptcy, as Royalty Claimants allege, the elements of unjust enrichment are satisfied even if Ursa later distributed the property. *See Yetter Well Serv., Inc. v. Cimarron Oil Co.*, 841 P.2d 1068, 1070 (Colo. App. 1992) (stating that imposing a constructive trust, including in instances of unjust enrichment, is "appropriate" even if "innocent third persons have subsequently acquired an interest in the property"). And in any event, the underpaid royalties were not property of Ursa's bankruptcy estate to distribute with priority to secured lenders.

Although we hold that a constructive trust is an available remedy under Colorado law, none of this absolves the Royalty Claimants of the responsibility of identifying the funds that they assert to be equitably theirs. "To protect the interests of secured and unsecured creditors, beneficiaries of trust funds bear the burden of identifying and tracing their trust property." *Columbia Gas*, 997 F.2d at 1063. On remand, the Royalty Claimants will have the opportunity to satisfy that burden. If they do so, the Bankruptcy Court shall

11

consider whether the equitable remedy of a constructive trust is appropriate as to each Royalty Claimant.

C

Finally, Ursa raises the issue of the Debtor-in-Possession (DIP) Order issued by the Bankruptcy Court, alleging that failure to go through the DIP Order's prescribed Challenge Procedure precludes any challenge to the composition of Ursa's estate now.

The DIP Order states that "Debtors represent, stipulate, acknowledge, and agree, on their own behalf and their estates, and subject to Paragraph 6 of this Final Order, that all of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties." App. 575. The Order goes on to state that this stipulation shall be binding on all creditors and parties in interest "unless, and solely to the extent that, a party in interest with standing . . . challenges the Debtors' Stipulations by commencing a Challenge Proceeding . . . by a date that is on or before . . . seventy-five (75) days following the entry of the Interim [DIP] Order." App. 601.

Ursa argues that the Debtors' stipulations are binding on the Royalty Claimants, the Royalty Claimants are already outside of the seventy-five-day window to initiate the Challenge Proceeding, and their whole effort here is estopped.

The Royalty Claimants argue a variety of reasons why they did not improperly ignore the orders. One is sufficient: the DIP financing facility was secured by first-priority liens on Ursa's assets, and those liens do not extend to property that was never part of Ursa's estate in the first place. If a financing facility is a secured agreement

12

backed by a lien on Ursa's assets, it follows that it could not extend to what was never part of Ursa's estate in the first place and therefore could not defeat a collateral challenge on the composition of the estate as such. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 426 (2d Cir. 2005) ("Bona fide questions of property ownership . . . are antecedent to the distributive rules of bankruptcy administration because they seek to determine whether an asset is actually part of the debtor's estate, rather than deciding the entitlement of certain creditors to pieces of that estate. Property ownership questions thus precede distribution[.]").

\*　　\*　　\*

For the foregoing reasons, we will vacate the order of the District Court and require remand to the Bankruptcy Court for further proceedings consistent with this opinion.